## JAMES F. STUART *v.* CHARLES ALLEN *et als.*

W. DIED, leaving a widow and three minor children. The widow administered, and, as administratrix, presented a petition to the Probate Court, stating that she had agreed to sell the real estate of the intestate to the plaintiff for $3,000, and to procure an order of Court for the sale, asking the Court to confirm this agreement; and asking further, that, if the Court should refuse so to confirm, then for a general order of sale upon the petition, which sets up other facts, usual in such cases. The Court made an order to show cause, etc., and at the same time appointed a guardian for minor and absent heirs, who, on the same day, consented to a decree of sale. No service of the order to show cause was made on the heirs. This decree confirms the agreement with plaintiff, directs a deed to be made to him, and afterwards proceeds to order a rule upon the heirs to show cause why a sale at public auction should not be made. Afterwards a second decree of sale was made, in the usual form : *Held,* that this agreement for a private sale did not render the decree of the Court for a public sale void ; that, although this agreement could not bind the estate, yet it was not against public policy and void.

*Held,* further, that to make such agreement void as against public policy, the necessary effect of it must be to contravene some positive right or duty ; that the duty of the administratrix is not necessarily inconsistent with an agreement to ask an order of sale upon consideration that a purchaser will give an agreed sum at the sale; that, so far as her own interest was concerned, there was no objection to such an arrangement, and if the sale was to be public, probably no good reason exists for holding that the administratrix should not provide or assure herself in this way that, if sold, the property would bring a reasonable price, before proceeding to take steps to have the sale ordered—the propriety of ordering the sale, and confirming it afterwards, being still left to the Court, uninfluenced by any such agreement.

*Held,* further, that the decree is not void, because of the defect in the petition, which prays not simply for a decree of sale—the proper course—but seeks, as its main object, the confirmation of the agreement for a private sale to plaintiff ; that, though the petition was demurrable for this cause—asking, as it did, what

31

the Court could not grant—yet, as the petition presented all the facts necessary to give the Court jurisdiction of the matter of sale, it was sufficient to support the decree when attacked collaterally.

*Held,* further, that the decree and proceedings are not void, on the ground of inconsistency, in this : that the first order confirms the agreement with plaintiff, and then requires the parties to show cause why the land should not be sold; and the second decree orders the property to be sold, as usual in such cases; that this course was an irregular and improper exercise of jurisdiction, but that these irregularities and defects must be corrected on appeal, and cannot be indirectly attacked.

The Court had no power to confirm this private sale, and the order to that effect was void; but this act of the Court, though an assumption of power, did not divest it of its rightful powers.  It had power to order a sale of the land, and this power was exercised by its final or second decree.

The power of the Probate Court to order a sale of the real estate of the deceased, results from the fact that the personal estate in the hands of the administrator is insufficient to pay debts, etc.

To the exercise of jurisdiction, in ordering a sale of the real estate, it is not necessary that there should be a literal compliance with the directions of the statute.  A substantial compliance is enough.  Nor is it essential that there should be in the petition itself, and without reference to any other paper or thing, a statement of these facts.  The main fact required, is the averment of the insufficiency of personal assets, and mere formal defects in the mode of statement would not affect the jurisdiction.

So far as the question of jurisdiction is concerned, it is immaterial whether the statements of the petition be true or not; the jurisdiction rests upon the averments of the petition, not upon their proof.

Where the petition for the sale of real estate, after setting out the debts, proceeds, "that the personal property of said estate, which will appear by reference to the inventory now on file, is not more than is sufficient for the use and support of the family of said decedent, and is wholly insufficient to pay said indebtedness, and that it is necessary to sell real estate to pay the same;" and after giving some further matter, concludes : "Petitioner further alleges, that the inventory heretofore filed gives a description of all the real estate of which the said intestate died seized, and the condition and value thereof, which said inventory is made a part of this petition :" *Held,* that the petition contains a sufficient averment as to the "amount of personal estate that has come to his hands, and how much thereof, if any, remains undisposed of," within the statute ; that the reference to the inventory makes, for all purposes of the reference, the inventory a part of the petition, and the amount of the personal estate is shown by the inventory, as is also the value.

The question, argued by Justice Baldwin, in *Gregory* v. *McPherson,* (13 Cal. 562) as to the necessity of setting forth—in a petition by an executor to sell real estate—as a jurisdictional fact, the amount of personal estate that has come to his hands, is still open in this Court—that case not being authority, because the Justices deciding it did not concur in the grounds of their judgment, as appears in the report.

Stuart *v.* Allen.

The prayer of the petition in this case is in the alternative, and, therefore, the petition, as a pleading, was defective, but this defect does not go to the jurisdiction of the Court; but, if the true construction of the petition be that it prays for a sale only in the event that the agreement with plaintiff is not confirmed, still, perhaps, even then, the jurisdiction of the Court would not be affected.

*Query:* Whether, under the Act of 1851, relative to the estates of deceased persons, in the petition for the sale of real estate, which shows that the personal estate, whether disposed of or not, is insufficient to pay the debts, it be essential also to aver how much of the personal estate has been disposed of; or whether the sole jurisdictional fact is that required by the one hundred and fifty-fourth section of the act, making the one hundred and fifty-fifth and one hundred and fifty-sixth sections thereof mere modes to give effect to the substantive power conferred in section one hundred and fifty-four, and hence—like other statutory means to carry out a power—merely directions to the Court in the exercise of its jurisdiction, and not conditions to the existence of the jurisdiction.

In this case, the petition and inventory referred to therein are to be regarded as one paper, so far as concerns a statement of the facts which they contain; and when the petition states that the personal property of the estate, which will be shown by the inventory, is insufficient, this averment, though informal and indirect, is equivalent to saying that the personal estate mentioned in the inventory is still on hand, and, therefore, undisposed of. The statement is of a fact existing at the time of the filing of the petition—and that fact is, that the property of the estate is shown by the inventory, and is insufficient to pay the debts, etc.; and if it be the property of the estate, it has not been disposed of.

In cases of this sort, where titles to real estate will be injuriously affected by holding Probate Courts to great strictness of proceeding, a fair and liberal construction should be given to their acts, whenever it can be legally done.

Taking the petition and inventory together, in this case, the description of the real estate is not so defective as to render the sale void upon its face. To require an accurate or exact description is too strict a rule.

Where, upon petition by the administrator to sell real estate of the deceased, to pay debts, the usual order for minor and absent heirs to show cause, etc., was entered, and, on the same day, a guardian *ad litem* was appointed for such heirs, who, on the same day, appeared, and consented to an order of sale, which was accordingly then made: *Held,* that this order of sale is not void, on the ground that the order to show cause, etc., was not served on the minor heirs, and that the guardian was appointed, and the order to show cause made on the same day.

The statute is silent as to the time when the guardian *ad litem* is to be appointed; and the order of sale is not void because a copy of the order for the minor heirs, to show cause, was not served on such heirs before said appointment.

After the guardian *ad litem* in this case had appeared and consented to an order of sale, the Court had jurisdiction over the subject and the parties. At what time, after this, the Court should act on the petition, was within its discretion.

*Query:* Whether the various circumstances of this case, the irregularities, the price for which the property was sold, its real value, its consideration, the effect of

these things upon the sale, entitle the infant heirs to come into a Court of Equity to set aside the sale.

The only point decided here is, that the objections made to the sale are not sufficient to render it void upon the face of the proceedings.

APPEAL from the Seventh District.

Suit to quiet title. The facts are substantially stated in the opinion. It may be added, however, that the Probate Court, in confirming the contract between Mrs. White and Stuart, directed her to make him a deed of the land. The land, after being advertised for sale as usual, was sold at public auction to Stuart, for $3,000; a report of the sale, in which Stuart was stated to be the highest and best bidder, etc., was made to the Court and confirmed, and a deed of the right, title and interest of the deceased ordered to be executed by the administratrix to Stuart, which was accordingly done; he entered into possession of the premises, and now sues, making Mrs. Allen—the widow of White— with her present husband, and the two surviving infant children of White, defendants. Plaintiff claims title under the Probate proceedings and the deed. The infant defendants, in their answer, simply set up title as heirs at law of Charles White, deceased, and also as heirs of their deceased infant brother. Mrs. Allen and her husband claim that she is owner of the one-half of the property, as survivor of the community between herself and Charles White, and of one-third of the other half as heir of her infant son, deceased. The property was community property. The case, as made by plaintiff, consisted of the power of attorney to Crosby, the contract between Mrs. White and Stuart, the Probate proceedings and the deed to Stuart.

The only mention in the inventory of real estate—except that stated in the opinion of the Court—is, "forty acres of land with improvements, in the north part of the city of San José."

The petition of Mrs. White, as administratrix of the estate of Charles White, deceased, for the sale of the real estate—after first setting forth the debts of the estate as amounting to $63,000—proceeds as follows:

"That the personal property of said estate, which will appear by reference to the inventory now on file, is not more than is sufficient for the use and support of the family of said decedent, and is wholly insufficient to pay said indebtedness, and that it is necessary to sell real estate to pay the same.

"Your petitioner further says, that prior to the death of said decedent,

he purchased a claim to a certain rancho, situated in the county of Sonoma, and called 'Arroyo de San Antonio,' of A. L. Dz. Ortega and I. B. Brouillet; which said claim to said rancho is now being litigated before the Board of United States Land Commissioners for the adjudication of land claims in California, at a very great expense to said estate.

"That the said claim is one of doubt as to whether it will be confirmed by said Board, as many claims are being rejected by them, and the said claim is of that class which is exceedingly doubtful, and will require a great outlay of money and much time in litigating it to a final confirmation; and if the same should be rejected, it will be very hurtful to the interest of said estate. Petitioner further says, that she has had an offer for said land claim, and has contracted the sale of the same with one James F. Stuart, for the sum of $3,000, by which the litigation and expenses concerning said claim will cease; and by which she, as the administratrix of said estate, and as one of the heirs and persons interested therein, may be able to cancel said claim of John Nobilis for the sum of $4,200.

"Petitioner further says, that there are other and adverse claims presented to said rancho, and are now being pressed before said Board of Commissioners, whose owners are interested and are attempting to defeat the claim of said estate to said rancho.

"Petitioner, therefore, asks that the said contract for sale of the interest in said rancho, 'Arroyo de San Antonio,' be confirmed, and that she be ordered to make a deed of the same to said James F. Stuart, and to stop the expenses and litigation concerning the same, as being for the best interest of said estate.

"Petitioner further prays, that if the Court should not consider it for the best interest of said estate to confirm said contract, that the Court would make an order for all persons interested in said estate to show cause, on the first day of next term of the Probate Court, or as soon thereafter as the same can be heard, in the city of San José, why an order of sale, to pay the said indebtedness of the said estate, as aforesaid, should not be made, to sell the interest of said estate in said claim to said rancho, 'Arroyo de San Antonio,' in the county of Sonoma; and also why an order of sale should not be made to sell block No. 14 in White's addition to the city of San José, lying between Main and Fourth streets and Jackson and Empire streets in said city; and upon the hearing of this petition, that such orders and decrees may be made as the nature and interest of the case may require.

" Petitioner further alleges, that the inventory heretofore filed gives a description of all the real estate of which the said intestate died seized, and the condition and value thereof, which said inventory is made a part of this petition ; that the names of the heirs of said decedent are Ellen E. White, your petitioner, aged thirty years, James T. A. White, aged thirteen years, Charles E. White, aged eight years, and Mary E. White, aged six years.

" (*Signed.*)    ELLEN E. WHITE,

"Administratrix of estate of Charles White, deceased.

" Subscribed and sworn to before me, this first day of April, A. D. 1854.

"JOHN B. HEWSON, Clerk.

" Filed April 1st, 1854.

"JOHN B. HEWSON, Clerk."

On the same day the Probate Court made an order, which, after reciting the fact of this petition being filed, and that it appeared necessary, etc., to sell the real estate—pretty much in the language of the petition—proceeds thus :

"And it further appearing to said Court that said sale should be confirmed, as is shown by the said petition of said administratrix ; and it further appearing to the Court that the attorney for the minor heirs, F. Hall, had examined the said petition, and making no objection thereto ;

" It is, therefore, considered and adjudged by the Court that the sale of the interest of said decedent in and to said rancho, 'Arroyo de San Antonio,' situated in the county of Sonoma, and State of California, (being the same bought of A. L. Dz. Ortega and I. B. Brouillet) made by said administratrix of the said estate to James F. Stuart, for the sum of $3,000, be, and the same is hereby confirmed ; and the said administratrix is hereby ordered to make the said Stuart a deed to all the rights and interest of said decedent in said rancho, on the payment of said sum of money.   And it is further ordered, that all parties interested in said estate show cause on the first day of the next term of this Court, or as soon thereafter as the same can be heard, why an order for the sale of all the interest of said decedent in the rancho 'Arroyo de San Antonio,' lying in the county of Sonoma, State aforesaid, should not be made, to pay the indebtedness of said estate; and, also, why the same order should not be made at the time for the sale of block No. 14 in White's addition to the city of San José, lying between Main

and Fourth streets, Jackson and Empire streets; and for the sale of such other real property as may be necessary to pay the indebtedness of said estate; and that notice of the same be given according to law."

On the same day, Hall was appointed attorney for absent and minor heirs. On the twenty-fourth day of April, 1854, the Probate Court made an order, that notice be given that the hearing of the application of the administratrix to sell the real estate would be had on the first day of the regular term of the Court—it being recited in this order, that due notice had not previously been given. A notice was accordingly posted in three public places in Santa Clara county. May 22d, 1854, the Court made this order of sale, etc.:

"In the matter of the estate of Charles White, deceased.

"And now comes Ellen E. White, administratrix of the aforesaid estate, by her attorneys, and asks the Court upon the petition heretofore filed, for an order of sale of the property hereinafter described; and it appearing to the Court that the petitioner Ellen E. White, James T. A. White, Charles E. White and Mary E. White, are the legal heirs and representatives of said Charles White, deceased, and that the said James T. A., Charles E. and Mary E. White are minors; the Court hereby appoints Frederic Hall as guardian *ad litem* for said minors; and the said Frederic Hall having examined said petition for the sale of said property, and filed his written consent to the same, and the Court being fully advised in the premises, grants the prayer of the said petitioner Ellen E. White, administratrix of the said estate. It is, therefore, considered, adjudged and decreed that said administratrix advertise and sell, according to law, the following described real property, belonging to said estate, ' to wit: ' All the right, title and interest which the said decedent had in and to the rancho called the 'Arroyo de San Antonio,' being in the county of Sonoma, and State of California, being the same which the said decedent bought of A. L. Dz. Ortega and J. B. Brouillet; and, also, the following block of lots lying in the city of San José, county of Santa Clara, to wit: Block No. 14 in White's addition to the city of San José, lying between Main and Fourth streets, and Jackson and Empire streets in said city; and that notice of the sale of said property in the county of Sonoma be given once a week, for four weeks, in the 'Sonoma Bulletin,' or whatever newspaper may be published in said county of Sonoma; and if no newspaper be published there, then in the ' San Francisco Herald;' and that notice of the sale of said property in San José be given once a week, for four weeks, in

the ' San José Telegraph and Santa Clara Register,' a weekly news-paper published in the county of Santa Clara; and that said sales be for cash."

Hall, the guardian *ad litem*, files his consent for a sale on the same day.

It seems the notice of sale was published in a weekly newspaper in Sonoma county, where the land lies, for three weeks preceding the sale, and also posted in three public places in said county; and on the eighteenth of July, 1854, the property was sold at public auction to plaintiff, he being the highest and best bidder, for $3,000.

Defendants offered no evidence. The Court below held the probate proceedings to be void, on the ground, mainly, that the petition of the administratrix was insufficient to give the Court jurisdiction to order a sale of the real estate of the deceased; and accordingly decreed that the prayer of plaintiff's complaint be denied; and that his title be held null and void, as against defendants, etc. Plaintiff appeals.

Considerable of the argument of counsel is given in this case, because of the vital importance of one of the questions discussed, and because the Court leaves that question still open.

*A. P. Crittenden*, for Appellant.

I.   The agreement between Mrs. White and Stuart was not fraudu-lent or void. It was merely a contract on the part of Stuart, that if Mrs. White would procure an order of sale, he would bid so much money; and on the part of Mrs. White, that she would sell and convey the land to Stuart at such sale, for the sum of $3,000, provided there was no higher bid. (*Hunt* v. *Frost*, 4 Cush. 54.)

The object of the contract was laudable. It was to secure such an offer beforehand as would satisfy the Probate Court of the propriety of the sale, and that it would pay off the debts. Mrs. White being under no liability to Stuart if, at the sale, the property should sell for more than $3,000, was not contracting any obligation whatever in conflict with her duty as administratrix.

The appellant claims under the probate sale. The only material question is, Was that sale valid and effectual? The making of a prior void contract for the sale has no bearing upon that question, except so far as it might show that the administratrix had imposed obligations upon herself which might subject her to the suspicion of having subse-quently made an unfair sale. But such suspicion would not prove that the sale was unfair.

It might be a circumstance to be considered with others upon any contest as to the fairness of the sale—as if it were alleged that the sale was fraudulent, and for a price less than the value of the property, and that the heirs were injured.   Here, there is no suggestion of such a fact.   The question of the fairness of the sale was passed upon by the Probate Court, and its decision is conclusive.   Besides, the answers of respondents do not aver fraud in the sale, nor that the highest price was not bid at public auction and paid for the land, nor is there a particle of testimony to countenance such an idea.

II.   So far as the interest of Mrs. White is concerned, (five-ninths) it vested in the appellant by force of the deed made by Mrs. White, as administratrix, regardless of objections that may have existed on account of irregularities in the proceedings; she is estopped, by her deed, from denying appellant's title.   ( *Cable* v. *Martin & Bell,* 1 How. Miss. 558; *Raines* v. *Mc Gee,* 1 S. & M. 208; *Sumner, Administrator,* v. *Williams,* 8 Mass. 162; *Johnson* v. *Collins,* 12 Ala. 322; *Brown* v. *Edson,* 23 Vt. (8 Wash.) 435; *Fairfield* v. *Williams,* 4 Mass. 427.)

The objection that the petition for sale did not set forth sufficient facts, applies only to the interest of the infants; for, whether there was, or was not, any order of sale, the deed made by Mrs. White would estop her from claiming anything against it.

The alleged defect is, that the petition does not set forth the amount of personal estate that had come to the hands of the administratrix, and how much thereof remained undisposed of.

Upon the authority only of *Gregory* v. *McPherson,* (13 Cal. 562) this was held to be a fatal defect.   That case is not a decision of this Court upon the point.   It is the opinion of one Judge only.   .It is not sustained by any authority.   What is said upon the subject by Judge Bronson, in *Bloom* v. *Burdick,* (1 Hill, 130) is a mere dictum.   The account was held sufficient.   But this case, if closely scrutinized, is a strong authority in our favor.

The case before this Court is not within the rule laid down by Judge Baldwin in *Gregory* v. *McPherson;* for the petition presented by Mrs. White did show all that the statute required.   It stated the condition of the estate at the time the petition was filed.   She says the personal property of the estate *will* (not *did*) appear by the inventory, and that the inventory gives (not *gave*) a description of the real estate, and she annexes to her petition a copy of the inventory.   The inventory is offered, therefore, not as a statement of property in hand when the

9

inventory was made, but when the application for an order of sale was presented.    However defective the petition, it gave jurisdiction to the Probate Court, which acted judicially in passing upon the questions of insufficiency of personal property, and the necessity for a sale, and the decision of the Court, was conclusive.    (Cases cited above.    *Butts* v. *Bagley,* 12 Pick. 572, 582–3; *King* v. *Kent,* 29 Ala. 542; *Poor* v. *Boyce,* 12 Tex. 448; *Mount* v. *Valle,* 19 Mo. 4 Bennett, 621; *Frye* v. *Kimball,* 16 Id. 9; *Tyler* v. *Hand,* 7 How. U. S. 573.)

*Gilbert* v. *Columbia Turnpike Co.* (3 Johns. Cases, 107) *Ventress et al.* v. *Smith,* (10 Peters, 161) and *Thatcher et al.* v. *Powell et al.* (6 Wheat. 119) are not in conflict with our position.

*Gilbert* v. *Columbia Turnpike Co.* was an inquisition to condemn property, and the fact which alone could give rise to the special statutory authority did not exist, and was not stated.    In *Ventress* v. *Smith,* a private sale, made by an administratrix, was declared void, because prohibited by law, and the general expressions used by the Court are to be considered in connection with the case.

*Thatcher* v. *Powell* was a sale for taxes.

It is contended that the order of sale was void, because the Probate Court had no jurisdiction of the persons of the minors for want of service.    It is not true, that there can be no judgment without service of process.    Whether there shall be any, and if so, what process served, it is for the law to declare.    (Prac. Act, sec. 31; *Ware* v. *Robinson,* 9 Cal. 107—Osborn's brief; *Sutherland* v. *De Leon,* 1 Texas, 302–7.)

In an application for an order of sale, the statute does not require service on the minors.    (Act to Regulate Settlement of Estates, secs. 156, 7, 8, 9.)    Otherwise, in proceedings in the District Court.    (Prac. Act, sec. 9, 10.)

Burnett, J., in *Gray* v. *Palmer,* (9 Cal. 838) said: "The appointment of a guardian dispenses with service."    (*Bloom* v. *Burdick,* 1 Hill, 138, 140; *Barnes* v. *Hardeman,* 15 Tex. 366; *Banta's Heirs* v. *Calhoun,* 2 A. K. Marsh. 167.)

The statute requires the guardian to be appointed only before the Court acts on the petition—that is, before making any decision upon the application.    (Sec. 159.)

The Court only acts on the petition when it comes on for hearing. The Court does not act at all upon it when first presented.    Then it is the Judge, as contradistinguished from the Court, who makes an order

for the appearance of parties interested. This order which the Judge makes for appearance, is made in chambers—out of term. The distinction between the action of the Judge and the Court is carefully preserved by our statutes. (Secs. 63, 64, Wood's Digest, 154, and Act to Regulate Settlement of Estates, *passim.*)

The guardian having power to appear for the minors, and having done so, they were before the Court, and are bound by its decision. Our statute prescribes no term of notice to be given to the guardian, and it is for the Court to judge whether he has had sufficient notice. (*Thomas* v. *Le Baron*, 8 Met. 355.)

As to exhausting the personal property before there can be a sale of the real estate, our statute permits the sale of real estate whenever it appears that the personal property is insufficient to pay debts. None of the personal property need be sold first. In this, it differs from the New York statute, and hence the case of *Corwin* v. *Merritt* (3 Barb. 346) is not in point.

As to description of property of which sale was asked, the petition shows that White had bought the Rancho San Antonio, that is, the whole of it, and that a claim was pending for it before the Land Commissioners. The description is sufficient to maintain ejectment. How can a Court anticipate that the Rancho San Antonio is not a tract of well known boundaries?

As to the objection that the same land is called in the inventory Rancho of "Petaluma," I answer that it is immaterial. Suppose it is the same land, there is a sufficient description of it in the petition. Suppose it is a different tract, its ownership would not affect the power of the Court to sell the tract described in the petition.

As to the value of the land, it is stated in the inventory.

The requirement of the statute in regard to stating the condition of the real estate means only, that if there is anything peculiar about the property which might be calculated to influence the judgment of the Court on the question of sale, it should be stated, as if the land is encumbered by mortgage, or is improved or productive. In this case there was nothing peculiar, except in regard to the title of the Rancho San Antonio, and that is stated.

It is further urged, that the estate owned a block in White's addition to San José which is not included in the inventory.

It is the same as the forty acres mentioned in the inventory. If it were not, it would only follow that the inventory was incorrect in fact,

and that is wholly unimportant in this case, which is purely a question of sufficiency of allegation to give jurisdiction. It makes no difference if the entire statement, as to the description, amount, condition, etc., of the real estate, is absolutely false. It is enough, if it is sufficient in form.

*Shattuck, Spencer & Reichert,* also for Appellant.

I.    Frequent probate sales in the State, and their extent and importance, show the necessity of some certain rule in regard to them. Ecclesiastical Courts of England, and Surrogate Courts of New York, are not Courts of record, and decisions under them have led other Courts astray, where Probate Courts are of higher dignity.

II.    Sales under our Probate Court may have a rule of construction certain and legal.

They are Courts of record, (Wood's Dig. 157) and have general jurisdiction of probate business, and of sales of land to pay debts. (Id. 154.)    Whenever, therefore, the record shows—1st. The death of the party; 2d. His residence in the county at the time of his death; then the Probate Court has full jurisdiction of the subject matter of the estate. (*Haynes* v. *Meek,* 10 Cal. 118.) All subsequent acts are *coram judice,* if the proceeding is *in rem;* and in other matters, if the record shows jurisdiction of the person. The same rule is established in New York by statute. (Dayton's Surrogate, 6, 7, 586–7.)

It is said, Probate Courts are inferior. So is every Court from which an appeal lies. (*Kemp's Lessee* v. *Kennedy et al.* 5 Cranch. 173; *Ex parte Tobias Watkins,* 3 Pet. 205.) It is also said, they are of limited jurisdiction. So are the Courts of the United States; so is the Superior Court of the city of New York; the late Superior Court of the city of San Francisco; the late Vice Chancery Court of the State of Mississippi, and many other city Courts of record. Yet the decisions are uniform, that none of those named are inferior and limited in the technical sense of that term; and their judgments and decrees, although their jurisdiction may not appear of record, are not nullities. (*Ex parte Tobias Watkins,* 205, citing *Kemp's Lessee* v. *Kennedy et al.* 5 Cranch. 173; *Williams* v. *Armroyd,* 7 Id. 423; *Williams' Ex'rs* v. *May's Ex'rs,* 6 Id. 267; *Kennedy* v. *Georgia State Bank,* 8 How. 586; 4 Phil. Ev. 189; *Pond* v. *Pond,* 10 Cal. 500.)

Their jurisdiction is general over all probate business, and especially so as to the power of selling lands belonging to the estate of deceased

Stuart *v.* Allen.

persons for the payment of debts.    Indeed, we should say it was exclusive, had not this Court decided to the contrary.

Having this general jurisdiction over the subject matter, and being constitutional Courts and Courts of record, why should not the same dignity and verity attend their decrees that is awarded to other Courts named above?    (3 Blackstone's Com. 24, 25 ;  2 Phil. Ev. 29 ;  17 Mo. 442.)

III.    Whether the Court shall sustain the preceding views or not, to the extent contended for, the current of authorities sustain the proposition, that a purchaser at a probate sale has only to look to the order of sale and to the decree of confirmation, and these, unreversed on appeal, are final and conclusive except for fraud.    ( *Grignon's Lessee* v. *Astor,* 2 How. 341 ;  *McPherson* v. *Curtiff,* 11 Serg. & R. 433–4 ;  *Buck* v. *Sheldon,* 1 Day, 170 ;  *Judson* v. *Lake,* 3 Id. 318 ;  *Perkins* v. *Fairchild,* 11. Mass. 226 ;  *Longtilon* v. *Atkins,* 1 Pick. 535 ;  *Spencer* v. *Spencer,* 1 Gall. 622 ;  *Lynch* v. *Baxter,* 4 Texas, 531 ;  *Poor* v. *Royce,* 12 Id. 440 ;  *Seymour* v. *Seymour,* 22 Conn. 272 ;  *Howard* v. *Moore,* 2 Mich. [Gibbs] 226 ;  *Bryant* v. *Allen,* 6 N. H. 116 ;  *Coxe* v. *Davis,* 17 Ala. 714 ;  *McDade* v. *Burch,* 7 Geo. 559.)    It is a judicial sale, and such a sale passes the title.    (*Halleck* v. *Gay,* 9 Cal. 195, and cases cited ; *Lynch* v. *Baxter,* 4 Texas, 431.)    Our statutes say as much for probate sales.    A deed in accordance with the decree of confirmation shall be deemed to convey all the interest of the intestate at the time of his death.    (Wood's Dig. 408, sec. 172.)

IV.    But it may be said, that if the Court has no jurisdiction, its decrees will be invalid.    Granted ; and what then ?

The law gives the Court jurisdiction of every dead man's estate, whose last residence was in the county.    The petition for letters of administration officially informs the Court of the fact, which gives cognizance of the case.    This is the petition for jurisdictional facts.    This informs the Court of the death, the place of death or the last residence, and of property in the county, and gives jurisdiction of the estate ; all afterward is *coram judice,* so far as the subject matter is concerned ; and none of the orders and decrees of the Court touching that estate are void, where the proceedings are *in rem,* nor in any other matters where the record shows that the Court had jurisdiction of the person by such notice as the statute requires.

We do not admit, that if this first petition was deficient in jurisdictional facts, the subsequent acts of the Court would be *coram non*

Stuart *v*. Allen.

*judice*, for a trial is had and the facts are proven, and the Court decides. This gives jurisdiction of the estate; and if its first decision on a defective petition be valid, how much more so will be the subsequent ones.   It is conceded, that respectable authorities (perhaps the current of authorities) hold that the Court obtains jurisdiction to order a sale from the petition for a sale.   This is when, as under the common law rule, the lands are not assets in the hands of the administrator; by our law, they are assets.   The Court has jurisdiction of the estate as an entirety from the first petition, and it becomes its duty to adjudicate upon all questions that may arise, and to see that it is administered according to law.

If its situation requires land to be sold to pay the debt, it is as much the duty of the Judge to order a sale as it is to order a delinquent administrator to account.   True, the law requires that when an order of sale is deemed necessary by the administrator, he shall file a petition setting forth the amount of personal property which has come to his hands, and what disposition, if any, has been made of it, etc.; but this is not to give jurisdiction, for that the Court has already, and could doubtless order an administrator to file such petition, if it deemed that justice required it, and the administrator neglected it, or the Court could receive the petition from a creditor and act upon it, and compel the administrator to make a sale.   (Wood's Dig. 408, sec. 164.)

In Courts of general jurisdiction, we admit that the complaint brings the subject matter within the jurisdiction of the Court, for that is the commencement of the action, and without an action—a suit commenced —the Court has no jurisdiction of any particular matter or thing.   The law, likewise, prescribes what shall constitute a complaint.   That law, through carelessness and want of skill, is frequently violated to such an extent that a demurrer would lie; yet, though defective, it is still a complaint, and gives the Court jurisdiction of the subject matter.   If personal service is made of the summons, in any of the modes prescribed, jurisdiction is, likewise, given of the person, and judgment rendered upon a defective complaint is conclusive, unless reversed.   A sale under it passes the title of the property sold.

No case, we think, can be found where a sale, under a judgment, has been avoided because the complaint was defective.   Now, if a Court that only obtains jurisdiction of the case by the complaint, can render a judgment that is not a nullity, on a complaint acknowledged defective, will not the Probate Court, that already has jurisdiction of the

Stuart *v.* Allen.

estate, be sustained, to the same extent, in its decrees upon a defective petition, made after full jurisdiction of the estate is obtained? Must a purchaser at a probate sale be responsible for the technical accuracy of the petition, when the purchaser at a Sheriff's sale is protected, however defective may be the complaint?

We say, then: 1st. The Probate Court obtains jurisdiction of an estate by virtue of the law and the facts stated in the petition for letters of administration, and having once obtained jurisdiction of the estate, its subsequent orders and decrees, relative to the estate, are judicial acts, and cannot be attacked collaterally, except for fraud.

2. That the petition for an order to sell land is designed to give information, and not jurisdiction, to the Court.

3. If the jurisdiction of the Court depended on the petition of the administrator, although defective and subject to a special demurrer, it will still be sufficient for the purposes of jurisdiction, and the orders and decrees of the Court, based upon it, and not appealed from, would be valid.

V. The petition, in the record, of Ellen E. White, administratrix, etc., was a substantial compliance with the statute, in every particular. (Wood's Dig. 106, sec. 155.)

No exception is taken to the petition in the record, except that it is charged that the petition does not set forth the amount of personal estate that had come to her hands, and her disposal of it.

Take the whole of the personal assets, as they are inventoried— $2,494—from the amount of debts, and there remains nearly $4,000 deficiency of assets.

These facts are shown by the petition, and they show that land must be sold, or the debts go unpaid; this gives jurisdiction to, and requires action by, the Court. But the counsel may say the administratrix presented an inventory, and not an account of the personal estate; in answer to which, we say: 1st. Our statute requires neither inventory or account; its requisitions are, " the amount of personal estate that has come to his hands." It makes no difference in what shape it comes, if it is there.

2d. The inventory being made part of the petition, and containing a detailed statement of all the personal property, would be sufficiently definite, even if our statute required an account.

But conceding, for the sake of the argument, that this Court will disallow any presumptions in favor of the Probate Court, we contend that

the petition for an order of sale is a substantial compliance with our law, and sustained by authority. (4 Wend. 436 ; *Leverett* v. *Harris*, 7 Mass. 292 ; 11 Mass. 226 ; 12 Pick. 572, 582–3 ; 2 Cow. & Hills' Notes, 214 ; *King* v. *Kent*, 29 Ala. 542 ; *Poor* v. *Boyce*, 12 Tex. 448 ; *Mount* v. *Valle*, 19 Mo. [4 Bennet] 621 ; *Tyler* v. *Hand*, 7 How. 573.)

*Gregory* v. *McPherson* (13 Cal.) on this point is not authority ; nor is *Burdick* v. *Bloom* (1 Hill, 135). In this latter case, the petition was held sufficient ; and the speculations of the Judge, that, under certain other circumstances, he would have decided it defective, are mere *dicta*. The facts in the petition, in most of the above cases, were considered as judicially before the Probate Judge, and the necessity of a sale judicially settled by him. So our statute requires that the Probate Judge shall hear and. determine the necessity for a sale. The order recites that he has heard and determined ; he has found as matter of fact, that the personal estate is insufficient, and that a sale of real estate is necessary to pay the debts.

We submit, therefore, first, that conceding that the Probate Court is inferior and limited, in the technical application of the term, and that no intendments or presumptions of law can be made in its favor, still the current of authorities sustains the position that a petition, though defective and subject to á special demurrer, will give the Court jurisdiction of the case ; and second, that the petition as it stands is a substantial compliance with the statute, and that even a special demurrer to it could not have been sustained.

VI. It is objected to the sale, that there was an agreement made and price fixed before the order was obtained. The administratrix was likewise an heir to one-half of the estate, and this half she could sell and convey at private sale, subject to the debts, or for the payment of them. ( *Cable* v. *Martin & Bell*, 1 How. [Miss.] 558 ; *Baine* v. *McGee*, 1 S. & M. 208.)

The cases cited by counsel, were cases in which the administrator had no interest in the thing sold. We admit that this contract, so far as the infant heirs are concerned, is a nullity, and it is probable, as part of it was against public policy, that upon the principle that if part of a contract is illegal it taints the whole, a bill for a specific performance of that agreement would not have been sustained. But this is not a bill for a specific performance, but to quiet the title which has already been made ; and the question now arises, how far the deed made estops the parties from disputing it ?

She, as heir to half of the estate, was capable of contracting, and did contract and convey for a valuable consideration; and if she could not convey as administratrix, still the deed binds her personally, so far as her interest is concerned, and she is estopped from disputing it. (See cases last above referred to; also *Sumner Admer* v. *Williams*, 8 Mass. 162; *Johnston* v. *Collins*, 12 Ala. 322; *Brown* v. *Edson*, 23 Vt. [8 Wash.] 435.) This latter case is precisely in point, and covers the whole ground.

Neither of these grounds will apply to the infant heirs, and if the order of sale is a nullity, their title did not pass. Assuming that the Court had jurisdiction of the subject matter, and of the persons of the heirs, then the fact that an agreement had been made that was a nullity on its face, so far as it affected the minor heirs, would not affect the power of the Court to order a sale.

The Court and the parties are presumed to know the law, and they all know that, as to the infants, the contract was an absolute nullity; that if any person bid more at the sale than Stuart had offered, he must outbid them or lose the land; and that if it had been so lost to him, not a dime, for the breach of it, could have been recovered, even from the adult heir who had made it.

There is no guarantee that he shall have it at his bid; and it is not certain that damage could be recovered of him were he then to refuse to bid. It is certain, however, that if he keeps his promise, and makes the bid, the estate is gainer and not a loser by the transaction.

It will be seen by the order, that the Court—one of the defendants then being Judge—confirmed the private sale at the same time that an order to show cause was made. It seems from this order, that the Court believed that the private sale was valid as to the widow's share, and that to that extent it should be confirmed. The order does no harm; at most, it is surplusage. The order to show cause was regular, and so with all subsequent orders; and the fact that the Court did a foolish thing previously, would not affect these orders.

Again, there was no fraud in this null agreement. The sale was had according to the statute. The Court sat in judgment on it and pronounced it legally conducted, and fairly made. It is *res judicata*, unless for fraud. (*Runyon* v. *Newark Ind. Rub. Co.* 4 Zabr. 467; *Hunt* v. *Frost*, 4 Cush. 54.)

Whatever construction this Court may think such a contract entitled to, it is not now in controversy. We claim, not through or by virtue of

32

that agreement, but through and by virtue of a deed; a deed made after a competent Court had decreed that the sale was legally made, and fairly conducted, and that a deed should be executed.

Objection is also made, that the record does not show that the Probate Court had jurisdiction of the infant heirs.

1. A sale of land to pay debts is a proceeding *in rem*, and passes the title to the purchaser, irrespective of irregularities; all the purchaser need look to is the order of sale, the decree of confirmation, and the deed of the administratrix. (*Grignon* v. *Astor*, 2 How. 310; *Thompson* v. *Tohner*, 2 Pet. 157; *Sheldon* v. *Newton*, 3 Ohio, [U. S.] 494; *Lynch* v. *Baxter*, 4 Tex. 431; *Rogers* v. *Wilson*, 8 Eng. [Ark.] 507; *Howard* v. *Moore*, 2 Mich. [Gibb's] 226; *Ludlow* v. *Wade*, 4 How. 504; *Wyman* v. *Campbell*, 6 Porter, 219; *Gilman* v. *Thompson*, 11 Vt. 643; *McPherson* v. *Cunliffe*, 11 Serg. & R. 429; *Perkins* v. *Fairfield*, 11 Mass. 227.)

2. But the act was complied with; and the Court, in ordering a sale of White's estate, had jurisdiction of the persons of heirs, as well as the subject matter.

Our statute does not require notice to be served on the infant heirs, and in that respect differs from the statute of New York. (N. Y. Rev. Laws, sec. 4.) The probate record shows that notice of the hearing of the petition was ordered and posted. The presumption which we ask in favor of a Court of Record is, that the law was fully complied with in every particular. (See the authorities above cited, and especially *Grignon* v. *Astor*.)

But aside from presumption, the record shows that an attorney was appointed for the absent and infant heirs when the petition was first presented, and that appointment would give the Court jurisdiction of the infants.

There is no provision requiring an attorney of the absent heirs to be appointed on hearing a petition to sell land; the consequence is, that the attorney thus appointed must have been intended to represent, and did represent the infant heirs solely. Hence, the attorney was appointed to represent the infants. His being called attorney, instead of guardian *ad litem*, can make no difference.

When this petition was presented, the defendant, Allen, was the Probate Judge. At the hearing, Judge Buckner probably noticed that Mr. Hall was called attorney, instead of guardian *ad litem;* and to cure defects, made a new order, before acting on the petition, appointing him

guardian *ad litem.*    Having been appointed on the first of April, some seven weeks before hearing the petition, he was prepared to act at once and fulfill his duties, according to the statute, by "appearing for the infants." . (Wood's Dig. 407, sec. 159.)

The only sensible construction, therefore, which can be put upon this proceeding is, that Mr. Hall was appointed guardian *ad litem* for the infant heirs on the filing of the petition on the first of April.

Again, so far as the question of jurisdiction is concerned, the appointment of a guardian *ad litem* any time prior to the hearing of the petition, would be a substantial compliance with the statute.

The action of the Court upon the petition contemplated by the statute is the hearing the proof, and the deciding the necessity of the sale.    Therefore, the appointment of the guardian prior to such hearing, would fulfill the requisitions of the law.    Doubtless, as a question of policy, it would be better for the Court to appoint long enough before the hearing for the guardian to become acquainted with the facts of the case, but this does not affect the jurisdiction of the Court as to the person.    The power to appoint a guardian is expressly given; the duty of that guardian, when appointed, is specific—to appear for, and take care of the minor's interests in the proceedings.    (Wood's Dig. 407, sec. 159.)    This "appearing for them" gives the Court as full jurisdiction of their persons as would the appearance by attorney in an ordinary suit.    If the proceeding is not *in rem*; if its validity depends at all upon the jurisdiction which the Court may have of the infants, it is all effected by the appointment of the guardian, and by his appearing for them.    The jurisdiction of the persons of the infants was, therefore, complete in this case.

Should the cases of *Bloom* v. *Burdick,* (1 Hill) and *Schneider* v. *McFarland* (2 Comst.) be considered authority, and applicable under our statute, still they do not touch this case, for here the infants were in Court.

And should this Court consider that the record should show that notice was published, or that personal service should have been made upon the infants, as the better way, yet the act of the Probate Court would only be irregular, and not void; for one of the courses prescribed by the statute, to bring the infants into Court, was pursued.    And the law presumes that notice was duly given, or that the parties were present.    (*Gerrard* v. *Johnston,* 12 Ind. 637.)

*W. T. Wallace*, for Respondents.

I. As to the contract made by Ellen E. White, while she was administratrix of the estate, with Stuart.

This was a contract of sale, made without any order of the Probate Court—and more than that, it was a contract to procure the proper order of the Court, by which the order of the Court was, before it was obtained, made the subject of bargain and sale between two persons, both of whom were dealing with trust property, one of them being the trustee, the other purchasing the same property with notice of the trust.

This contract was void upon several distinct grounds.

1. Because it is against public policy that an administratrix should make such an agreement. *( Overseers of Bridgewater* v. *Overseers of Brookfield,* 3 Cow. 301; *Herrick* v. *Grow & Brown,* 5 Wend. 579; *Logan* v. *Gigley,* 9 Ga. 114; *Perry* v. *Booth,* 7 Tex. 598.) This last case shows that this contract is not binding upon the administratrix personally.

2. It is void, because the express statute laws of the State declare it to be invalid, (Wood's Dig. art. 2293) and, as affecting by its obligation the administratrix, and influencing her free and just action in relation to the property of the intestate, it is made void by the obvious policy and spirit of Art. 2302, Wood's Digest. By that statute, it is the duty of the administratrix to report the proceedings upon the sale, and the proportion of the value of the property which was realized by the sale, for the action of the Court.

Now, her interest under this contract with Stuart, was to make such a report as would confirm the sale, and thus enable her to discharge the obligation of her contract with Stuart. The law will not permit this conflict, but will declare the contract void, and thus avoid the risk of a conflict between the duty of a trustee and her interest.

II. The proceedings which occurred in and under the orders of the Probate Court were void, because, by said proceedings, the Court never acquired any jurisdiction over the persons of the infant heirs, nor jurisdiction to order a sale of the land.

1. No jurisdiction over the persons of the infants was ever acquired. (6 Wheat. 123; 1 Hill, 135; 15 Mass. 330.) The Probate Court is of inferior and limited jurisdiction. *( Smith* v. *Anderson,* 6 Cal. 659.) That jurisdiction is enquirable into collaterally, see *Elliott* v. *Pearsol,* 1 Pet. 340; and this case was cited and approved in *Hickey* v. *Stewart,*

3 How. 762; *Wilcox* v. *Jackson*, 13 Pet. 499. See *Rogers* v. *Dill*, 6 Hill, 416, where proceedings in chancery, regularly had, were collaterally avoided for want of jurisdiction.

To bring these infant heirs before the Court, it was necessary that an order to show cause should be personally served on all persons interested in the estate, or that it should be published in a newspaper. In this case no personal service was made, nor any publication had at any time. (Wood's Dig. art. 2296.)

The proviso in that article, contemplating assent, refers to persons who are "*sui juris*," and capable of consenting to any proceeding in Court. But the attorney or guardian *ad litem*, appointed by the Court, cannot consent. (*Doe dem. Platter* v. *Anderson*, 5 Port. [Ind.] 33.) Jurisdiction of the person of the infant must be first obtained, before the Court can appoint a guardian *ad litem* for the infant. (*Wheatley* v. *Harvey*, 1 Swan, [Tenn.] 484; Dayton on Surrogates, 260.)

It is the personal service, or the service by publication in a newspaper, which gives the Court jurisdiction of the person; the appointment of a guardian *ad litem* is insufficient for that purpose, unless followed by or preceded by service of process. Posting in three places in the county is unwarranted by the statute. The day set for hearing the petition was the twenty-second of May, 1854. On that day, the guardian *ad litem* was appointed by the Court; on that day, he filed his consent in writing; on that day, the order was made that the property be sold.

It is said, however, by the appellant, that Hall was appointed such guardian on the first of April, 1854, when the petition was filed. It will be seen, from the record, that the petition was filed on the first of April, 1854, by the administratrix, in which she prayed the Court to confirm the contract of sale with Stuart, but that, "if the Court should not consider it for the best interest of the said estate to confirm said contract, then that the Court would make an order for all persons to show cause," etc., why a sale of real estate should not be made. On the day the petition was filed, Hall was appointed attorney for the absent and minor heirs, and consented on the same day that an order should be made confirming the sale of the administratrix to Stuart, and the order was entered on the same day, to wit: the first day of April, 1854.

Here his functions as attorney ceased; and this is the evident view taken by all parties, because, when the petition again comes up, on the

twenty-second of May following, upon the application for an order to sell, the Court then distinctly appoints him guardian *ad litem.*

Our statute (Wood's Dig. art. 2297) requires that, if the minors have a guardian, the process shall be served upon him; if not, the Court shall appoint a guardian before proceeding to act on the petition.

If it be held, under the proper construction of the statute, that the Court should appoint the guardian before the process was served, then such an appointment, on the very day, at the very instant of time, when the final action of the Court is to be had, will invalidate the sale. (*Sheldon* v. *Wright,* 7 Barb. 44; *Corwin* v. *Merritt,* 3 Id. 340.)

Whatever apparent conflict there may be in the authorities in relation to the question, whether the appointment of the guardian should precede or should follow the service personally made on the infants of the process of the Court, no authority can be produced under a statute like ours, which holds that the single *ex parte* order of a Court of inferior jurisdiction, appointing A the guardian *ad litem* of B, will have the double effect: first, to give the Court jurisdiction over B; and second, to authorize A to consent to a judgment against B.

The tenth section of the Practice Act shows that if the District Court were to appoint a guardian *ad litem* for an infant, without the summons having been first served, the order would be a nullity; and yet the District Court is one of general jurisdiction, while the Probate Court is an inferior Court, and; therefore, cannot take jurisdiction, nor administer remedies other than those given, and in the manner prescribed by the statute. (*Grimes' Estate* v. *Norris,* 6 Cal. 625.)

III.   The petition itself, filed in the Probate Court, praying the order to sell the real estate, was insufficient.

If our former proposition be correct—*i. e.,* that there was no jurisdiction acquired over the persons of these infants—it will be immaterial how complete and perfect the petition itself may be.

But if these infants had been legally cited, and had appeared in Court, still the petition was insufficient for the forced divestiture of their title, and consequently there was no authority in the Court to make any order of sale.   The statute declares that the petition shall set forth certain facts.   (Wood's Dig. art. 2295, sec. 155.)   Says Mr. Justice Baldwin, in *Gregory* v. *McPherson,* 13 Cal.: " This petition, with these required statutory averments, are jurisdictional facts.   Upon such a petition the Court has power to act; upon no other.   There is no difference between no petition at all, and a petition lacking the substantial statements required by statute."

Stuart v. Allen.

1. This petition is defective in this: that the administratrix does not represent to the Probate Court the necessity of selling any real estate, or ordering any to be sold, only in the event that the contract of sale with Stuart is not confirmed by the Court; but that contingency never happened, because the Court instantly, upon filing the petition, entered an order confirming the contract between the administratrix and Stuart; and after that was done, the power of the Court under this petition was gone.

2. Treating the petition as an absolute and unconditional application for an order to sell real estate, it did not set forth the amount of personal estate which had come to the hands of the administratrix. (Wood's Dig. art. 2295, sec. 155.) It is not pretended by the appellant, that the petition does disclose to the Court the amount of personal property, except by reference to the inventory, which had been theretofore filed under Art. 2271. The petition was filed on the first of April, 1854, and the inventory had been on file ever since the thirteenth of June, 1853—a period of nine months and seventeen days. This is insufficient. (Bloom v. Burdick, 1 Hill, 135.)

3. It does not appear positively, or inferentially, by the petition, nor by any reference whatever, how much of the personal property remains undisposed of. (Art. 2295, sec. 155.) If the inventory be relied on, it shows that in April, 1854, there was on hand, with the administratrix, about $2,500 of personal property, which was "first chargeable" with the debts of the estate (Art. 2277); and it is only in the event of their exhaustion, that the real estate may be sold. (Arts. 2277, 2293, 2294, 2295.)

4. There is in this petition no description of all the real estate of the deceased, the condition and value of the respective portions. (Art. 2295, sec. 155.)

As to the value of the land, we are referred to the inventory again. Now, the value was declared to be "uncertain" in June, 1853, and in April, 1854, in a proceeding to sell real estate, where the administratrix ought to inform the Court of a description of all the real estate and the condition and value of the respective portions, she merely refers to the fact that ten months before that it was registered in the inventory "value uncertain;" and this is all the averment about value, and there is not even an excuse inserted that the value could not be ascertained, even if that would excuse the peremptory requirements of the law.

Again: Where, in the petition, in the inventory, or in any other paper whatever, was there anything going to give the Probate Court the most distant conception of the extent or quantity of any tract of land called "Petaluma" or "Arroyo de San Antonio," (or any other name whatever) situate in Sonoma county?

How did the Court find the extent of the land? How did the Court know whether the interest of the decedent was an estate in severalty, in joint tenancy, or in common; whether that interest was one-half, or one-quarter, or one-fiftieth of the premises? in short, we submit to the Court, if the words "interest" in the rancho called "Petaluma," in the county of Sonoma, value uncertain,  *  *  *  $5,000," can be called "a description of the real estate of·the deceased, and the condition and value of the respective portions and lots," such as to enable any Court to determine whether it was for the interest of the estate that this property should be sold in preference to any other and all other property of the deceased.

In relation to that inventory and its reliability, it may be proper to observe, that the petition also prays for the sale of block No. 14 in White's addition to the city of San José, lying between Main and Fourth streets, and Jackson and Empire streets, in San José; "and for a description of the property and its value, the Probate Court is also referred in the petition to the inventory," and the inventory has no allusion to that property whatever.

The proceedings in the Probate Court are, therefore, utterly insufficient in respect to the jurisdictions of the persons of the infant defendants, and in respect to the jurisdiction of the subject matter; in other words, there is no service of process, and there is no sufficient petition.

But conceding, for the purpose of the argument, that neither of these propositions is true, then we say all these proceedings are vitiated and avoided by the apparent fact, that these proceedings were the mere means adopted by the parties for the purpose of consummating the agreement made between the appellant Stuart and the administratrix.

By article 2,300, section 165, it is provided: "Upon the making of such order, (of sale of real estate) a certified copy of the order of sale shall be delivered by the Court to the executor or administrator, who shall be thereupon authorized to sell the real estate as directed."

Now it is not averred in the complaint, nor proved in the case, that any such order was delivered to the administrator. (*Young* v. *Keough*, 11 Ill. 643; *Smith* v. *Hileman*, 1 Scam. 325.)

This is a mere naked power not coupled with an interest, and in such cases the law must be strictly pursued. (*Jackson* v. *Shephard*, 7 Cow. 9; *Atkins* v. *Kennan*, 20 Wend. 249.)

The proceedings in this case, if void for want of jurisdiction, could not affect the right of Mrs. Allen, because she was administratrix. (7 Texas, 498.)

There is no implied warranty in sales by Sheriffs, Executors, Administrators or other Trustees. *Caveat emptor* is the rule. (See authorities collected in 3 Phil. Ev. 27, in the edition of the year 1859.)

BALDWIN, J. delivered the opinion of the Court—FIELD C. J. and COPE, J. concurring.

This action involves the title to a tract of land in Sonoma county. Charles White died, in this State, in 1853, seized of this tract. He left a widow and three infant children. One of the children died after the proceedings hereafter mentioned, upon the validity and effect of which the questions made by this record are dependent. Mrs. White—now Allen—administered on the estate of the decedent. She made a power of attorney to one Crosby, by which she empowered him to make a contract, upon the best terms he could, for the sale of this tract of land. Crosby, accordingly, on her behalf, agreed with Stuart that Mrs. White should procure an order of the Probate Court for the sale of the premises, and convey them to Stuart, on the payment of $3,000. The administratrix then reported to the Probate Court that she had made the trade with Stuart, and also filed a petition, praying the Court to confirm the sale; and further, that if the Court should conclude not to confirm the contract she had made with Stuart, then an order for sale be made. Upon the filing of this petition, the Court made an order, appointing Frederick Hall guardian for the absent and minor heirs of the estate. The petition, after setting out the debts, proceeds, "that the personal property of said estate, which will appear by reference to the inventory now on file, is not more than is sufficient for the use and support of the family of said decedent, and is wholly insufficient to pay said indebtedness, and that it is necessary to sell real estate to pay the same." The petition, after giving some further matter, concludes in this wise: "Petitioner further alleges, that the inventory heretofore filed gives a description of all the real estate of which the said intestate died seized, and the condition and value thereof, which said inventory is made a part of this petition." Then follow the names of the heirs.

The inventory is in the record. It shows some $1,200 or $1,500 of personal assets, and contains a brief account of the real estate—among other things, this : " Interest in the rancho called Petaluma, in the county of Sonoma, value uncertain, $5,000."

After the filing of the petition, and the order to show cause, the Court appointed Frederick Hall as guardian for the absent and minor heirs of the estate. The guardian, on the same day, consented to the decree. No service seems to have been made of any order to show cause, upon the heirs. The Court rendered a decree for the sale of the premises. This first decree is inconsistent in this, that it confirms the contract between Mrs. Allen and Stuart, and afterwards proceeds to order a rule to the heirs, to show cause why a sale of the premises, at public auction, should not be made. Afterwards, a decree of sale was made, in the usual form. Several objections to these proceedings are urged by the respondents. We propose to consider them in their order.

1. It is urged, that this contract by Mrs. Allen was contrary to public policy, and void, and that the decree entered in execution of it, and to give it effect, partakes of the same infirmity. The general argument in support of this proposition is, that it is the duty of the administrator to protect the property of the estate ; that the sale is required to be public ; that this was an arrangement for a private sale ; and that, by the contract, the administratrix placed herself in an antagonistical relation to her duty to the estate—her interest being one way and that of the estate another. Unquestionably, the administratrix could make no such bargain as this, so as to be binding upon the estate, whatever the effect upon herself, individually. But the question is not as to the effect of this agreement, as such, upon the estate ; but whether, because of the fact of the agreement, the subsequent decree is a nullity. We do not see how this is so. It is not every unauthorized agreement that is void, as against public policy ; much less is it true that every such agreement would destroy the power of the Court to make an order otherwise legal, though that order was in accordance with the agreement. To make the agreement void, on this ground, the necessary effect must be to contravene some declared right or positive duty. But the duty of the administratrix is not, necessarily, inconsistent with an agreement to ask an order of sale, upon consideration that a purchaser will give an agreed sum at the sale. This did not amount to a private sale, for the very agreement contemplates that the sale shall be public, and the Court had no power to make or authorize any other sale, or a

Stuart *v.* Allen.

sale in any other mode. So far as her own interest was concerned, we see no objection to such an arrangement; and if the sale was to be public, probably no good reason exists for holding that the administratrix should not provide or assure herself in this way, that, if sold, the property would bring a reasonable price, before proceeding to take steps to have the sale ordered. The propriety of ordering the sale, and of confirming it afterwards, was still left to the Court, uninfluenced by any such agreement; and it was not thereby deprived of any of its discretion in the matter. If we were to hold that such an agreement deprived the Court of its authority, the consequence would be, that the estate might not be sold or disposed of at all, and the interest of creditors be sacrificed or greatly postponed; and it would thus result that the jurisdiction of a Court of unquestioned general authority might be defeated by the mere act of the administratrix.

2. The next point is, that the decree is void, because the petition is fatally defective in this: that it does not simply pray for a decree of sale—but this prayer is in the alternative—the main object of the petition being to obtain from the Court a confirmation of the private agreement. There is some plausibility in this argument. We do not, however, think it sound. It is true, that the petition is defective in the respect mentioned; but this does not render the paper a nullity. It would be demurrable for this cause. It asked what the Court had no authority to grant; but this did not destroy the power of the Court to grant what it was empowered to give. So far, the petition presented all the facts necessary to give the Court jurisdiction of the matter of the sale; and this was enough, whatever else was inserted, to support its action when attacked collaterally.

3. Again: it is said that the decree and proceedings are void, because inconsistent in this, that the first order confirms the agreement, and then requires the parties to show cause why the land should not be sold. The second decree orders the property to be sold, as usual in such cases. This course of procedure was, certainly, very irregular, and calculated to embarrass the sale; but we do not see that it made the whole proceedings nullities. It was an irregular and improper exercise of jurisdiction; but these irregularities and defects must be corrected on appeal. They cannot be indirectly attacked. The Court had no power to confirm this private sale. The statute denies it all jurisdiction to make such an order. The order, therefore, was void; but this act did not take from the Court any of its powers. It was not divested of its

rightful powers merely because it assumed powers it did not possess. It did have power to order the sale of the land, and this power is exercised by its final decree.

4. It is next objected, that the petition does not set forth facts essential to give jurisdiction to the Probate Court. The alleged defect is, that the petition does not set forth the amount of personal estate that had come to the hands of the administratrix, and how much thereof remains undisposed of. The language of the petition has been already given. We do not understand that language to be or mean that the personal property was, at the time of the filing of the inventory, sufficient to pay the indebtedness, but that the property was so insufficient at the time of this petition. The inventory is referred to for the purpose of identifying the property. The statute provides as follows:

"Section 154. When the personal estate in the hands of the executor or administrator shall be insufficient to pay the allowance to the family, and all debts and charges of the administration, the executor or administrator may sell the real estate for that purpose, upon the order of the County Judge.

"Section 155. To obtain such order, he shall present a petition to the Probate Court, setting forth the amount of personal estate that has come to his hands, and how much thereof, if any, remains undisposed of; the debts outstanding against the deceased, so far as can be ascertained; a description of all the real estate of which the testator or intestate died seized, and the condition and value of the respective portions and lots; the names and ages of the devisees, if any, and of the heirs of the deceased; which petition shall be verified by the oath of the party presenting the same.

"Section 156. If it shall appear, by such petition, that there is not sufficient personal estate in the hands of the executor or administrator to pay the allowance to the family, the debts outstanding against the deceased, and the expenses of administration, and that it is necessary to sell the whole or some portion of the real estate, for the payment of such debts, the Probate Judge shall thereupon make an order directing all persons interested to appear before him at a time and place specified, not less than four nor more than ten weeks from the time of making such order, to show cause why an order should not be granted to the executor or administrator, to sell so much of the real estate of the deceased as shall be necessary to pay such debts."

It thus appears that the power of the Court to order the sale results

Stuart *v.* Allen.

from the fact that the personal estate in the hands of the administrator is insufficient, etc., and to obtain the order, the act directs the administrator to present a petition, setting forth the amount of personal estate that has come to his hands, and how much, if any, remains undisposed of. Now, in order to the exercise of jurisdiction, it is not necessary that there should be a literal compliance with the directions of the statute. A substantial compliance is enough. Nor is it essential that there should be in the petition itself, and without reference to any other paper or thing, a statement of these facts. The main fact required, is the averment of the insufficiency of personal assets, and mere formal defects in the mode of statement would not affect the jurisdiction. The reference to the inventory makes, for all purposes of the reference, the inventory a part of the petition; the amount of the personal estate is shown by the inventory, as is also the value. Whether the word *amount* has reference to quantity or value, therefore, is not material; nor will it do to say that this petition did not show that no other property except that in the inventory came to the hands of the administratrix; for the averment, though indirect, is that the inventory shows the amount, or, in other words, the inventory is referred to, to show what property belongs to the estate, and then follows the averment that it is insufficient. It is true, the petition does not expressly show how much, if any, remains undisposed of; but when reference is made to the inventory, as showing the property of the estate, the natural meaning of the language is, that, at the time of the reference, it is the property of the estate. In other words, the statement is, in effect, that this property has not been disposed of—for it is spoken of, in the present tense, as the property of the estate. In cases like this, it is very apparent that many evils and hardships, affecting titles injuriously, will result from holding Probate Courts to great strictness of procedure; and it is better, as it is more reasonable, whenever it can legally be done, to give a fair and liberal construction to their acts. We think the views we have presented are in harmony with the rules of law and the dictates of justice and policy. They do not contravene anything said by either of the Justices sitting in the case of *Gregory* v. *McPherson*, (13 Cal. 562) though that case is not authority—the Judges not concurring in the grounds of the judgment. The question there argued in the principal opinion may still be considered open in this Court. It will be remarked that it is immaterial, so far as this question of jurisdiction is concerned, whether the statements of the petition are true or not; the jurisdiction resting upon the averments of the petition, not upon proof of them.

5. Another objection is, that the petition only prays a sale in a given event—that is to say, in the event the contract is not confirmed. Perhaps, if this were the right construction of this paper, it would not affect the jurisdiction ; but we do not think it is the true construction. The prayer seems to be in the alternative, and therefore the petition, as a pleading, was defective ; but this defect does not go to the jurisdiction of the Court.

6. It is argued that, taking the petition and inventory together, it is not shown by either or both of these papers how much of the personal estate has been disposed of; and it is argued that this statement is a jurisdictional fact, without which all the proceedings are void. About $2,500 worth of personal estate came to the hands of the administratrix ; $1,000 seems appropriated for the support of the family. This would leave about $1,500 to be applied to the payment of the debts. There is no showing how this property was applied, nor can we presume that it was applied at all. The presumption is, if any, that it was still in the hands of the administratrix. The statute does not require an absolute exhaustion of all the personal property, before an order can be made for the sale of the realty. The one hundred and fifty-fourth section provides, that when the personal estate shall be insufficient to pay the allowance to the family, debts, etc., the executor, etc., may sell on the order, etc. And then the next section proceeds to declare, that to obtain such an order, the petition shall be presented, setting forth the amount, and how much of the estate remains undisposed of, etc. Section one hundred and fifty-six then provides, that if it appears by the petition that there is not sufficient personal estate in the hands of the executor or administrator to pay the allowance, the debts, etc., then the Judge shall order the sale.

We have already said that we regard this petition, and inventory referred to therein, as one paper, for all purposes of a statement of facts which they contain ; and that when the petition states that the personal property of the estate, which will be shown by the inventory, is insufficient, this averment, though informal and indirect, is equivalent to saying that the personal estate mentioned in the inventory is still on hand, and therefore undisposed of. The statement is of a fact existing at the time of the filing of the petition ; and that fact is, that the property of the estate is shown by the inventory, and is insufficient to pay the debts, etc.; if it be the property of the estate, it has not been disposed of, of course. We can make no nice criticism of the mere form of a statement, for the

Stuart *v.* Allen.

purpose of ousting a Court of jurisdiction in cases like this, and holding its proceedings void.

This view renders it unnecessary to consider whether the averment as to how much of the personal estate has been disposed of is an essential averment, when the petition shows that the personal estate, whether disposed of or not, is insufficient to pay the debts. It is argued, with great force, that the power of the Court to order the sale of the realty, by the one hundred and fifty-fourth section, comes from the fact that the personal estate is insufficient; that this is the sole essential required by that section, which imparts the power to the Probate Court, and that the subsequent sections are mere modes to give effect to the substantive power; and, like other statutory means to carry out a power, are merely directions to the Court in the exercise of its jurisdiction, and not conditions to the existence of the jurisdiction. But it is not essential to the decision of this case to pass upon this point, and we only state it to show that we have not overlooked it, or in any degree touched it by this opinion.

The last objection to the opinion is, that the real estate is not sufficiently described. · Taking the whole petition and inventory together, and we think the proceedings not void on this account. It would be holding the rule with great strictness, to hold that the sale is void upon its face, because the petition does not give an exact or accurate description of real estate.

7. It is objected that the order of sale is void, because there was no service of the order to show cause entered after the filing of the petition upon the minor heirs. Sections one hundred and fifty-six and one hundred and fifty-nine provide:

" Sec. 156. If it shall appear by such petition that there is not sufficient personal estate in the hands of the executor or administrator to pay the allowance to the family, the debts outstanding against the deceased, and the expenses of the administration, and that it is necessary to sell the whole, or some portion of the real estate for the payment of such debts, the Probate Judge shall thereupon make an order, directing all persons interested to appear before him at a time and place specified, not less than four, nor more than ten weeks from the time of making such order, to show cause why an order should not be granted to the executor or administrator to sell so much of the real estate of the deceased as shall be necessary to pay such debts."

" Sec. 159. If any of the devisees or heirs of the deceased are minors, and have a general guardian in the county, the copy of the

order shall be served upon the guardian. If they have no such guardian, the Court shall, before proceeding to act upon the petition, appoint some disinterested person their guardian, for the sole purpose of appearing for them, and taking care of their interests in the proceedings."

It is urged that the appointment of the guardian *ad litem* was made on the same day on which the order of sale was entered, and that this vitiates the proceedings. The statute is silent as to the time of the appointment; and we cannot hold the act of the Court and of the guardian void on the ground suggested. It is said again, that the service must be made of a copy of the order before such appointment. But the statute does not so prescribe. It is not perceived what useful purpose would be subserved by such a service; for the infant could make no use of the information thus offered him, and the guardian would be as well advised by notice of his appointment as if a copy of the order served on the infant were given him. It seems that in this case, the Court, "before proceeding to act upon the petition," did appoint a disinterested person to act as guardian *ad litem* for the infant heirs; and that this guardian appeared for them. We cannot conceive of any principle which, after this appointment and appearance, denied jurisdiction to the Court over this subject and the parties. At what time the Court should act after this, was within its discretion. But as the guardian did not contest the case of the petitioner, but assented to the order of sale, one time was, probably, as good as another for the action of the Court. If service of the copy of the order to show cause were necessary to be made on the guardian, to give jurisdiction where no appearance was made, we presume that the appearance of the guardian was sufficient to give jurisdiction, the object of the service being to bring the party into Court, or give him notice of the proceeding.

We have considered this case upon the grounds presented here and in the lower Court. The questions made, are as to the jurisdiction of the Probate Court, and the alleged nullity of the proceedings upon their face. Whether the various circumstances of the case—the irregularities, the price for which the property was sold, its real value, its consideration, the effect of these things upon the sale—entitle the infant heirs to come into a Court of Equity to set aside the sale, is another question which we do not feel called upon to decide. We simply hold that the various objections made to the sale are not good grounds to declare it void upon the face of the proceedings.

Decree reversed and cause remanded.