NICHOLS ET AL. V. LEE.

1. INTESTATE ESTATES — RIGHTS OF SURVIVING HUSBAND SUBJECT TO
PAYMENT OF WIFE'S DEBTS.— Though, under the Colorado statutes,
the surviving husband inherits half of the estate of his wife, he takes
it subject to the payment of her debts, and where the estate is in-
solvent the purchaser of land belonging thereto under an execution
against the husband acquires no title as against a creditor of the
wife who purchases at the administrator's sale.
2. SALE OF LAND TO PAY DEBTS — APPRAISEMENT OF PERSONALTY.—
Where the only personal estate left by a wife is $100 in money, ap-
praisement thereof, as required by the laws of Colorado, is not essen-
tial to the validity of proceedings to sell her land for the payment of
debts.
3. NECESSARY PARTIES — CREDITORS OF HEIRS ARE NOT.— The cred-
itors of the husband, in such case, are not necessary parties to the
proceedings for sale of wife's land for payment of her debts, although
they may intervene if they so desire.
4. JURISDICTION OF COURT TO DECREE SALE OF REALTY.— The statute
which authorizes the administrator to resort to the real estate
"whenever, after inventory and appraisement, * * * it shall ap-
pear that the personal estate of any decedent is insufficient to dis-
charge the just debts allowed," does not make an inventory and
appraisement a condition precedent to the right to resort to the
realty. If the petition shows the amount and value of the person-
alty, the existence of debts, the lack of funds for their payment, and
that deceased died seized of real estate, setting forth the condition
of the title, it will, with service of process, confer jurisdiction to
decree a sale. Formal defects are cured by the proceedings.

*Appeal from District Court of Weld County.*

AN action in ejectment to recover the undivided one-half
of certain property in the town of Greeley.

In January, 1879, Henry W. Lee, appellee, recovered a
judgment against Edward T. and William A. Nichols in the
county court of Weld county for the sum of $93.50. Exe-
cution issued and returned, with indorsement of $18 and
some cents, as having been made, and no further property
found. The transcript of the judgment was filed in the
office of the county clerk, and by proper proceedings the
judgment was kept alive and operative, but remained un-

satisfied.  On the 15th of November, 1883, Sarah A., wife
of Edward T. Nichols, died intestate, owning in fee a lot
with a dwelling-house upon it in the town of Greeley, which
was incumbered by mortgage to the extent of $1,000, draw-
ing interest at twelve per cent. per annum, being a balance
of a larger sum formerly obtained on the property.  Sarah A.
left as heirs her husband, Edward T. Nichols, Lottie Nich-
ols (appellant), Edward T. Nichols, Jr., and two married
daughters, Laura N. Hill and Sarah M. Gumaer.  On the
death of Sarah A., appellee, assuming that Edward T., un-
der the statute, became, as heir of his wife, entitled to one-
half of the estate, and that his judgment was a lien upon it,
sued out a *pluries* writ of execution, had it levied upon the
undivided one-half of the property in controversy, caused
it to be advertised, and at the sale bought it for the sum
of $149, and afterwards received a sheriff's deed for the
same.

On the 26th of March, 1884, Edward T. was appointed
administrator of the estate of his deceased wife, qualified,
and entered upon the duties of the office.  An inventory of
the property of the deceased was made and filed by the ad-
ministrator, stating that there were no personal assets of
any kind whatever, except $100 in money.  Claims were
filed against the estate for debts of deceased, and on the
5th of May, 1884, established by proper proofs, and allowed
by the court as follows: To appellant, $2,322.69; to Wilbur
H. Hill, $720.04; and to Laura N. Hill, $561.37; all as
claims of the fourth class, aggregating $3,604.10.  On the
14th of June following the administrator filed a petition
duly verified naming the heirs, stating that he had filed an
inventory of the estate, which had been approved; that
there were no personal assets, except $100; that no ap-
praisement of the personal assets had been made or ordered;
stating the aggregate amount of claims proved and allowed
to be $3,604.10, the personal assets to be of the value of
$100, the deficit $3,504.10; asking that the premises be ap-
praised, and he be ordered to sell at public or private sale

so much of the real property as was necessary to pay the deficiency. Writs of summons were issued, returnable to the term to be held on the first Monday of July, 1884, which were returned unserved. A warrant for the appraisement of the estate was issued and an appraisement had on the 19th of June, in which the personal estate was valued at $100, and the real estate at $1,980 over the incumbrance. On the 19th of June an affidavit was filed with the clerk of the court, and an order prayed that publication of summons be made as to appellant and the two other non-resident sisters, and copies of summons be mailed to them at their places of abode, and that an *alias* summons be sent to the sheriff of Lake county in this state to be served upon Edward T., Jr., all of which writs were served and the acceptance of service indorsed upon each, which writs were properly returned. On the 18th of November following, judgments by default were entered, and a decree of sale of the real estate made. At the sale appellant became the purchaser at the appraised price, and on the 5th of January, 1885, the sale was approved and confirmed by the court, and on the 21st of January a conveyance of the property was made. She entered into the possession, retaining the same, making payments upon and largely reducing the incumbrance, paying taxes, and for necessary repairs, and receiving the rental and income of the property up to the time of the institution of this suit.

Upon the trial appellant verified an account, showing that during the time she had been in possession her expenditures, including payment on the principal and interest of the mortgage, exceeded the amount received by her by $643. A cross-complaint was filed in this case by appellant, setting up the proceedings to subject the real estate to sale for the payment of the debts; the insufficiency of the property to discharge the indebtedness; and the title of appellant by the purchase at the sale, etc. The case was tried to the court without a jury, resulting in a judgment for appellee " that he have and recover the undivided one-

half of the property upon payment of $321.54, being one-half of the excess of money paid by appellant over the amount received by her, and that the costs be equally divided," etc. The cross-complaint was adjudged "wanting in equity and insufficient, except as to the excess of expenditures above rents and profits." A large number of errors were assigned by appellant and cross-errors by the appellee.

Mr. J. E. GARRIGUES and Messrs. WELLS, McNEAL & TAYLOR, for appellants.

Messrs. HAYNES, DUNNING & ANNIS, for appellee.

REED, C. There is no troublesome conflict of testimony. All important facts are established by undisputed evidence, and seem to have been conceded. There are no charges of fraud or circumvention. The established facts are:

_First_, that at the time of the death of Sarah A. Nichols. appellee had a valid existing judgment against the husband Edward T., and another, amounting to something over $100; _second_, that Sarah A. died intestate, seized in fee of the property in controversy subject to the incumbrance; _third_, that the value of the real estate over the incumbrance was $1,980, and the personal assets $100, making the aggregate value $2,080; _fourth_, that at the time of her death she was indebted in various sums, amounting in the aggregate to $3,604.10, and exceeding the value of the estate $1,524.10; consequently, that the estate was insolvent.

These facts having been established or conceded without question, the issues to be determined were not issues of fact, but questions of law applicable to the facts; the theory of appellee being that there was an inheritance; that the husband, under the statute, immediately upon the death of the wife became the heir to one-half of the estate in gross, and that one-half of the estate at once vested in him regardless of the financial condition of the estate as to solvency; and that the inheritance cast at once became available for the satisfaction of the judgment, and took precedence to the

exclusion of creditors of the estate. This theory is erro-
neous and cannot be maintained. In our view of the case,
all supposed errors assigned may be disregarded except the
general one that " the court erred in finding that the plaintiff
[appellee] was the owner of the undivided half of the prem-
ises, and had been since July, 1884, and that defendant
[appellant] unlawfully detained the premises, and that the
matters in the cross-complaint of defendant are wanting in
equity and insufficient to afford relief, except as to the ex-
cess of expenditures paid above the rents by her received."
We think the entire case can be satisfactorily disposed of
by the application of primary and fundamental principles
of law to the admitted and established facts.

1. That during the life of the intestate the husband had
no interest in the estate in controversy that he could make
available for the payment of appellee's judgment or that
appellee could reach under execution. Upon her death the
judgment creditor could only take the distributive share
of the estate going to the husband; in other words, the
creditor could take no greater interest in the estate than
the husband took by inheritance in the estate of the wife
upon her death. These propositions are so self-evident and
elementary that no authorities are needed in their support.

2. Both in England and in this country lands held in fee
are subject to the debts of the owner while living and after
death, and this is the case whether the debt be due upon
matter of record, by specialty or by simple contract; and,
if the lands descend to the heir, or go to a devisee, he holds
them subject to be taken for the payment of the debts of
the ancestor, according to the laws of the state in which
they are situated. 1 Washb. Real Prop. (4th ed.) 87; *Wat-
kins v. Holman*, 16 Pet. 63; 1 Greenl. Cruise, 60, note.

3. The only title or interest in the estate that could be
taken at the sale under execution was the distributive share
of the husband in the estate of the wife after the payment
of all debts. The regularity and legality of the appoint-
ment of the administrator, and the validity of the claims

against the estate and the legality of their allowance by the court, having been unquestioned, and no objection made to the valuation of the estate and aggregate value found, and these proceedings being conceded to have been regular, the appellee to that extent is concluded by them. Under our statutes, as at common law, the lands of the intestate descend to the heir subject to the payment of debts, if the personal estate be insufficient; and when there is a deficiency of personal estate, neither the heir nor one holding under him by deed or by operation of law can retain the estate as against creditors, except by the payment of the debts. "Heirs, devisees and distributees are liable to creditors * * * to the full amount of the property received by them, whether real or personal." 2 Woerner, Adm'n, 1265. In *Borer v. Chapman*, 119 U. S. 587, it was held that, after the settlement and distribution of the estate and discharge of the administrator, a creditor of the estate could proceed in equity in the state of the domicile to which the assets had been removed, and subject such assets in the hands of an heir or devisee to the payment of the debt.

The estate being insufficient to pay the debts, it follows that an action could not be maintained by appellee without paying or contributing to their payment to the value of the property claimed.

Many questions, technical and of minor importance, are raised in regard to the proceedings in subjecting the property to the payment of the debts. The first, and one of the most important, is that there was no appraisement of the personal estate. The object of appraisement is to inform the court of the value of personal property as a guide and aid in the adjustment of the affairs. It is not contended that the petition did not contain and set forth the amount and value of the personal property, nor that the inventory was not correct; it showed the only personal property to be $100 in money. The contention is that the proceedings were irregular and illegal because three disinterested persons had not duly appraised the value of $100 in money.

The value of that item being known, and it being the only one, there was no personal estate to be appraised. The law does not require unreasonable, unnecessary, nor superfluous acts to be performed. The failure to cause such appraisement under the circumstances cannot avail to vitiate the proceedings.

It is urged that the service of summons was defective. We do not so regard it. The proceedings appear to have been regular; service was acknowledged by all to whom the writs were directed, and they were properly before the court. If they had not been, it was a defense that could only be interposed by the parties, or some of them; it was personal to them, and could not avail appellee.

It is also contended that the proceedings were faulty in not making appellee a party. Whatever title or supposed title appellee had was not by virtue of descent cast, but was derivative. As already shown, if he had any interest it was that coming through the heir. The proceedings were to settle the estate. Appellee was neither heir nor creditor, and was not an indispensable party,— if he had wished to intervene, he could have done so. His failure to do so should not prejudice the result. It follows that the general assignment of error should be sustained. The finding and judgment were erroneous: *First*, in finding the title in appellee, and that appellant unlawfully detained the premises; *second*, in finding that the averments in the cross-complaint were insufficient. The title of appellant was shown to be that acquired by purchase as creditor,— the only title that could prevail. The minor irregularities supposed to have existed in the proceedings could in no way affect appellee when the insolvency was established and conceded. There being no allegations of fraud, and it being obvious that under no possible manipulation could the estate have shown a residue for distribution, it becomes apparent that the only interested parties who would have a legal right to complain of such irregularities, if they existed, were the creditors who had not been and could not be fully paid.

We advise that the judgment be reversed and the cause remanded.

RICHMOND and BISSELL, CC., concur.

ON REHEARING.

BISSELL, C. The judgment is clearly right, and there can be found in the statute a perfect answer to all the contentions of counsel. While this opinion is probably not indispensable to a clear expression of the general law determining the rights of the parties, it will serve to construe the various statutory provisions on this subject, and demonstrate the correctness of the judgment thereunder.

The law in this country seems to be that upon the death of the ancestor the title to real property immediately vests in the heir who inherits under the statutes of the state where the property is situate; that the heir takes an absolute title, unincumbered by any claims of the administrator or of creditors, in the sense that the rights and claims of either are liens upon the property. In other words, in the absence of affirmative action by either the administrator to subject the property to the payment of debts, or similar action by the creditor to enforce his claim, the heir has a good title, which he may dispose of by contract, or which may be taken by his creditors. It is undoubtedly true that this title, whether it be that of the heir or the derivative title of the vendee, or of his creditor, may be divested in the manner designated by statute. 2 Washb. Real Prop. 414; *Wilson v. Wilson*, 13 Barb. 252–264; *Chubb v. Johnson*, 11 Tex. 470.

This general doctrine is not understood to be controverted by the appellant. According to the positions assumed upon the argument, the claim is that the heir succeeded to the estate, which thereupon became immediately subject to the judgment against him and available to process, and only liable to a defeasance if the representative or creditor should proceed in the authorized way to appro-

priate it. Conceding, *ex gratia*, that the heir took a legal estate, there can certainly be no question but that it was subject to execution, and might be levied upon by the judgment creditor. *Pitts v. Hendrix*, 6 Ga. 452; *Black v. Steel*, 1 Bailey, 307.

It is entirely unimportant to discuss or adjudicate this proposition, since the vital question is whether what was done by the administrator was a sufficiently substantial compliance with the statute to be operative to divest the heir's title. The answer to this inquiry will dispose of the controversy. That there is ample statutory authority to subject real property to the payment of debts admits of no question. In the absence of a power conferred by will, action may be taken by the representative under the provision of section 3577, etc., of the General Statutes of 1883.

This section 3577 commences: " Whenever, after inventory and appraisement therein, as herein provided, it shall appear that the personal estate of any decedent is insufficient to discharge the just debts, * * * resort may be had to the real estate." This section evidently refers to an antecedent statutory provision for the making of an inventory of the personal property, and its appraisement by individuals designated by order of the court for the purpose. All this is to be done within thirty days after the administrator's appointment, and, together with one or two similar duties, is among the earlier things to be done by him in the settlement of the estate. Since the petition in this case fails to show the making of an inventory, and does not state that there was an appraisement, and the record affirmatively shows that nothing of the sort was done, it is contended that it could not serve as a basis for proceedings to sell real estate. This can only be contended for on the hypothesis that the making of the inventory and the appraisement are conditions precedent to the exercise of the right by the administrator to resort to the real estate for satisfaction of the debts. This contention cannot be supported by the phraseology of the statute, for it does not provide

that it shall *appear* by the inventory and appraisement that the personal estate is insufficient, but the right to resort to the realty is given whenever it appears that the personalty is insufficient for the purpose. The words "after inventory and appraisement" can properly be taken only as a designation of the time at which, or before which, the administrator may not make his application. It is simply a statutory method of fixing the order of the proceedings, and in no sense can be so held to be a condition precedent as to make a failure to observe that statutory provision necessarily fatal to the proceedings. The reasoning of the principal opinion on the lack of the necessity for an inventory and appraisement under the facts existing in this case is entirely satisfactory and conclusive.

The subsequent section relates to the form and contents of the petition which the petitioner must present to the court. It specifies the court in which it shall be filed, and directs that the petition must set forth the amount and value of the personal estate "according to the inventory and appraisement." This phraseology, the appellee contends, necessitates a statement in the petition that the inventory and appraisement were had. No such construction is at all necessary, but in this regard the section as a whole simply requires the petition to show the amount and value of the personal estate. The primary purpose of the limitation is that, if there be an inventory and appraisement, the petition shall be in accord with its terms. If it be adjudged that an inventory and appraisement are not necessary, then the purpose of the statute is accomplished when the amount and the value of the personal estate are shown by the petition. The section further continues to prescribe what shall be done in case any sale has been made of a portion of the estate; requires the amount of debts and claims allowed and disallowed, and the amount of the legacies, if any, to be stated; and likewise requires it to contain a description of the whole of the real estate of which the decedent died seized, the nature of the title, the nature and value of the

several parcels, and the nature and amount of the incum-
brance. This is the substantial phraseology of the section
under consideration. In the case at bar the petition set
forth the amount and value of the estate and the debts
and claims, described the property in controversy as that
of which the ancestor died seized, stated her estate to be
that of a fee-simple, set out the incumbrance and prayed
the aid of the court. It did not state in so many words
that this was all the real property, nor did it attempt to
specify the value of the realty described. These defects,
it is claimed, are jurisdictionally fatal. Many cases in Cali-
fornia contain much that is apparent authority for the con-
tention; but when this section is construed, as it must be,
in connection with the subsequent provisions of the statute,
whereby the statutory scheme for subjecting the property
of a decedent to the payment of his debts is completed,
they cannot be held conclusive of the present controversy.
It is not universally true, even in California, that a failure
to comply with some of the statutory requirements is abso-
lutely fatal. The doctrine there only goes to the extent of
establishing the rule to be that, where there is a total fail-
ure to observe them, it is fatal, because those requirements
are of necessity jurisdictional in many particulars.

But, as was said in *Stuart v. Allen*, 16 Cal. 501: " It is
not necessary, in order to exercise jurisdiction, that there
shall be a literal compliance with the directions of the stat-
ute; a substantial compliance is sufficient. The main fact
required is the averment of the insufficiency of personal
assets, and mere formal defects in the mode of statement
would not affect the jurisdiction." Under that rule, the
petition in this case is abundantly sufficient. The lack of
assets, the existence of the debts, that the ancestor died
seized of real property, the nature of her title, and the fact
of the incumbrance, were all set out. These were the
fundamental requirements. The failure to state that this
was all the real property of which she died seized, and the
neglect to set up its value, would be purely formal defects,

available to the persons who are parties to the proceedings, if they sought to take advantage of them by either demurrer or motion, but entirely ineffectual to deprive the court of jurisdiction in the premises. A principal phase of this question received consideration in California, where the court says, in *Townsend v. Gordon*, 19 Cal. 208: "It may be that the omission of a portion of the real estate would not affect the proceedings or the sale of another portion described." The court then proceeded to discuss the question whether the heir could be divested of his title to any property for the sale of which there was no petition, and the necessity for the petition as a jurisdictional foundation for the proceedings; but conceded that the want of a statement in the petition that that was all of the estate would not be destructive of the validity of the sale, provided only that thing was sold which the petition described. This is in accordance with reason and sound sense.

This is the only construction consistent with the subsequent statutory provisions. It is evident that the petition is nothing more, so far as its effect and position in the proceedings are concerned, than that of a complaint in an ordinary suit; and, if enough is contained therein to call upon the heirs who are made parties to respond, it is sufficient, because the action of the court does not rest upon the petition itself. This is a very strong reason for disregarding the binding force of the authorities which hold slight defects fatal to the jurisdiction of the court. By the provisions of sections 3585 and 3588, the court is bound to proceed according to the principles of courts of chancery in like cases, and it is enacted that an issue shall be formed, heard and determined, and that the court must hear proofs touching the matters alleged in the petition. Whether the petition be taken as confessed, or the hearing is had upon an issue framed under the statute, the court must take the testimony and decide the matter upon the proofs. It is thus evident that under our statute, after service of process, all that is essential to confer upon the court jurisdiction to

proceed in the premises is a petition which .shall substantially contain what the statute points out.    The petition in this case contains everything that the statute specified, with the solitary exception of the words " the whole," and a statement of value; things not of the substance, but of the form, which must of necessity have been cured by the hearing which the statute provides for.

There seems to be a strong statutory support for the position taken in the main opinion that the creditor was neither a necessary nor an indispensable party.    This is found in sections 3578 and 3587, in the first of which it is provided that the widow or husband, the heirs or devisees, shall be made defendants; and in the second of which it is enacted that any creditor or person interested in the estate may appear; thus, upon the doctrine of exclusion by expression, making it plain that the creditor of the heir was in no sense a necessary party to the proper settlement of the controversy.

For the reasons above assigned, as well as those expressed in the main opinion, the exceptions should be overruled and the judgment follow as originally recommended.

REED and RICHMOND, CC., concur.

PER CURIAM.    For the reasons stated in the foregoing opinion, and in the principal opinion prepared by Mr. Commissioner REED, the judgment is reversed.

*Reversed.*