### [No. 3661.]

CLEMES, ADMINISTRATOR OF LIPE ESTATE, v. FOX ET AL.

1. COUNTY COURTS—POWERS AND JURISDICTION IN PROBATE MATTERS.
County courts have as ample powers and as full jurisdiction in matters pertaining to probate business as have the district courts over matters within their jurisdiction.

2. SAME—SETTING ASIDE JUDGMENTS—FRAUD OR MISTAKE.
The county court has power upon the application of a creditor of the

estate and upon good cause shown as for fraud or mistake, to vacate at a subsequent term its judgment or order, allowing a claim against the estate or approving the award for the widow's allowance; and in the absence of anything in the record to the contrary it will be presumed that the jurisdiction of the court was invoked upon grounds sufficient to sustain the ruling of the court.

3. SAME.

Where orders for paying out money of an estate were obtained through mistake or by means of fraud practiced upon the creditors, it was entirely within the jurisdiction of the county court in the light of this record to vacate such orders, notwithstanding the administrator had already paid out the money under such orders. When he made the payments he was charged with knowledge of the power of the court for good cause shown to annul and set aside the orders under which he acted.

4. WIDOW'S AWARD.

The cross-errors of appellee attacking as excessive the final award made to the widow, even if properly assigned, are not sustained by the evidence.

*Error to the County Court of Arapahoe County.*

THIS controversy arises out of the settlement of the estate of Clark Lipe, deceased. To the administrator's final report the defendants in error, as creditors of the estate, filed objections; and upon the hearing thereof the county court sustained their specifications relating to the three items of costs and expenses of administration, the special statutory allowance of the widow, and the undertaker's charge for burying deceased, for all of which the administrator claimed credits. The administrator prosecutes this writ of error to reverse the judgment entered by the county court as to these three items; and the defendants in error assign cross-errors to that portion fixing the widow's allowance.

Shortly after letters of administration were granted in August, 1891, and before the administrator published notice to creditors to present their claims for adjustment, the undertaker filed his claim against the estate in the sum of $675.40, which, there being no objection by the administrator the court allowed.

About the same time, appraisers for the estate were ap-

pointed, and, as was their duty under section 4735, Mills' Ann. Stats. (Sess. Laws, 1885, p. 397), they duly certified to the court an estimate of the value of each item of property to which, under the statute, the widow was entitled, aggregating in value $3,190. On the day this report was filed, all the heirs except one consented to the estimate, and upon the application of the administrator the court indorsed "approved" on the back of the report.

Two days thereafter an order was entered by the court which, after reciting that the widow had relinquished her statutory right to take the specific articles of property set apart for her, and in lieu thereof would accept their value in money, directed the administrator to pay to the widow her allowance, or so much thereof as the funds in his hands justified. As soon as the court approved the allowance, the administrator gave his check to the widow for $2,745.73 as a part payment, though it appears that this check was not cashed, or the money received by the widow, until two days thereafter.

Two days prior to the entry of this last order, viz: on October 24, being two days before payment was first authorized, and still before any publication of notice to creditors, the defendants in error notified the administrator that on a designated day they would present their claim and ask for its allowance against the estate. Pursuant to this notice, they filed their claim amounting to something over $4,700, and in due course of administration it was allowed. When it was allowed, and at a term of court subsequent to that when the orders above mentioned were made, these claimants made an application in the county court to have these approval orders set aside, but upon what grounds it was based the record is silent.

Thereafter, upon a hearing in which evidence was taken and which is not preserved in this record, the administrator and the objectors both appearing, and, as the latter contend, the undertaker and widow being represented, the court in November, 1891, set aside the order for the widow's allow-

ance, and in January, 1892, reduced the undertaker's bill to $400. After the vacating orders were so entered, the administrator virtually recognized their validity first by asking the court at the January, 1892, term to fix the widow's allowance at $3,190, which was denied. He then appealed to the district court from the vacating order, where he was unsuccessful; thence to the court of appeals, and again failed. See *Clemes v. Fox*, 6 Colo. App. 377. In February, 1892, the widow appealed from said vacating order, and failing to prosecute her appeal, it was dismissed. She then applied for a new award, and it was fixed at $2,667.50, but, on objections filed by the creditors, it was set aside; whereupon she sued out a writ of error in this court, which was dismissed. See *Lipe v. Fox*, 21 Colo. 140.

Thus matters stood until the administrator filed his final report in July, 1895. Upon this final hearing the widow asked the court to appoint new appraisers for the third time to estimate the value of the property to which she was entitled, which the court did, over the objection of the administrator; and upon their certification that the value was $2,315, the court· made an order fixing the allowance at this sum, and thereupon gave credit to the administrator for that amount, and a credit of $400 on the undertaker's bill. In the opinion appear such additional facts as are necessary to a clear understanding of the objections argued.

Messrs. GILMORE & PERSHING, for plaintiff in error.

Mr. R. W. BONYNGE, for defendant in error.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

Without extending this opinion by a discussion of objections to the ruling on costs and expenses,—the decision of which, in great measure, is within the discretion of the trial court, and depends so largely upon the facts of the case that

it would not be valuable as a precedent,—we content our-
selves by stating that after a careful examination we think
the ruling was right. This phase of the case being elimi-
nated, we proceed to a consideration of the other two items.

The specific errors assigned by the administrator are that
the court should have given him credit not only for $2,315,
which was the allowance to the widow upon the final hear-
ing, but for the full sum of $2,745.73, which he paid under
the first order of the court in which the widow's allowance
was fixed; and that the full amount of the undertaker's bill,
as first allowed, and which had been paid, should be credited
to him, and not merely the sum of $400, to which thereafter
it was reduced.

The objectors (defendants in error here) take the contrary
position with reference to these two items, and assign cross-
errors to the allowance of $2,315 for the widow on the final
hearing upon the ground that it was excessive.

Much of the discussion of counsel is irrelevant in the view
we take of the case. The material question is whether or
not the so-called vacating orders are absolutely void; for, if
they are void, then the first approval orders of the court fix-
ing the widow's allowance at $3,190 and the undertaker's
bill at $675.40 were in full force and effect at the time the
final report was filed; and unless such approval orders could
properly be, and then were, set aside by the court, the admin-
istrator should have received the credits asked. Through-
out the argument of counsel for the administrator, he
strenuously contends that these approval orders were final
judgments in the full sense of the term, and were binding
upon all of the parties to the controversy, and upon the
court when the final hearing was reached; that the county
court sitting for probate business does not possess any equi-
table jurisdiction to set aside, even at the same term, its
own orders of this character, much less at a subsequent
term; that when the administrator, under these approval or-
ders, made a payment upon the widow's allowance and paid
the undertaker's bill, no subsequent acts or judgments of

the court could invalidate such payments, or in any wise affect him, for the reason that both the subject-matter (viz: the money paid) and the persons of the widow and · the undertaker were beyond the jurisdiction of the court.

The objectors, on the other hand, strenuously contend that orders of the kind in question are merely interlocutory, entered in the course of the settlement of an estate, and subject to be set aside by the county court for good cause shown and upon notice, at any stage of the proceedings down to the time of the final report; that such orders were not binding upon them (the objectors) because entered before they had any notice, and before they were, as creditors of the estate, entitled to intervene. They further insist that the proceedings to set aside these approval orders were, in all respects, regular, and that the county court in setting them aside at a subsequent term had jurisdiction both of the subject-matter and of the persons affected by them.

We do not find it necessary to decide as to whether these approval orders were interlocutory merely, or final, as to the immediate parties affected by them. For the purposes of this opinion, we shall assume that they were final judgments under which the administrator was justified in acting, and, unless vacated or set aside, that they were binding upon the court when the final hearing was reached. We do not understand that plaintiff in error contends that, if the county court at the final hearing properly could, and did, disregard all previous orders, and then fixed the amount of these two items, he is in any position to complain of the court's ascertainment of the credits which it gave him; for if such was the method, there is nothing before us from which we may test the correctness of the ruling. But his grievance here is that the court's action was the result of an erroneous holding that it was bound by the order reducing the undertaker's bill to $400 and vacating a previous order for a larger sum; and the further erroneous ruling that it was bound to fix anew the widow's award because the original order, under which the administrator had made a partial payment, had

been subsequently set aside by a valid and still existing
vacating order. We thus premise, for it does not appear
from the record whether the court at the final hearing felt
itself at liberty to proceed as though the two items were, for
the first time, to be adjusted, or that the amount of the
undertaker's bill was *res adjudicata*, and the order setting
aside the widow's award valid. We shall assume, however,
with the administrator, that his rights upon this review are
to be measured upon the supposition that the court below
based its judgment upon the validity of the so-called vacat-
ing orders, and that, if they are valid, the judgment must be
affirmed.

In another branch of this same controversy, reported as
*Lipe v. Fox, supra*, it was held, among other things, that,
upon the application by a creditor of the estate, the county
court has power, for good cause shown, in a proper case to
set aside an allowance to the widow; and in still another
branch, reported as *Clemes v. Fox, supra*, it was held that
upon an application of one creditor an order allowing the
claim of another creditor might, for a good cause shown, be
set aside. The inquiry recurs, had the court power to vacate
*these* so-called approval orders, and did it do so? That it
purported to do so, the record is clear.

Whatever may be the law in England, or in other states
of the union, we are clearly of the opinion that, under our
constitution and statutes, the county court, in all matters
pertaining to probate business, has as ample powers and as
full jurisdiction with respect thereto as have the district
courts of this state over matters within their jurisdiction.
Constitution, art. 6, sec. 23; Mills' Ann. Stats. sec. 1054;
*Schlink v. Maxton,* 153 Ill. 447.

Counsel for the administrator concede that a court of
equity would have jurisdiction for good cause shown, and
upon the grounds of fraud or mistake, to vacate at a subse-
quent term one of its own judgments. We think the county
court has equal power with respect to its judgment, or order,
allowing a claim against the estate, or approving the award

for the widow's allowance. This record does not disclose the grounds of the objectors' application for setting aside these approval orders. That the court would have jurisdiction upon the ground of fraud or mistake is clear, and in the absence of anything in the record to the contrary, we must assume that it was upon the one or the other, or both, that its jurisdiction was invoked.

But the administrator says that the county court declared that he was actuated by good faith in making payment to the undertaker and to the widow. It must be remembered that these approval orders were set aside by the county court in 1891 and 1892, and that the hearing upon the final report was in 1895. It is true that the then presiding judge of the county court, at the final hearing, made the remark, in passing upon objectors' specifications relating to costs of appeal, that the administrator did act in good faith; but he then was speaking of the act of the administrator in appealing from these vacating orders, and said that the administrator was entitled to his costs and expenses of the appeal, for the reason that it was prosecuted in good faith, because, among other things, payments of the bills in question were made under existing orders of the court to that effect.

This, however, is far from being a ruling by the county court that the administrator acted in good faith in procuring the allowance to the widow and the allowance of the undertaker's bill; and, besides, these approval and vacating orders were entered by the county court when it was presided over by another judge than the one who heard the final report. We must not be understood as holding that the administrator was guilty of fraud, or that the approval orders were the result of a mistake. To sustain these vacating orders we need merely to hold that the county court had jurisdiction upon these grounds to vacate them; and, for aught that appears from the record, such might have been the grounds upon which they were entered.

A brief statement of some of the facts shows that the county court probably based its vacating orders on these equitable

grounds: The administrator was the son-in-law of the widow, and had been living in her home for several years prior to the death of the intestate. He must have known, or could easily have ascertained, something of the latter's financial condition. According to his own testimony, he was proceeding, under the advice of his attorney, upon the assumption that the amount of the widow's award, together with the first class claims, would more than consume the assets of the estate, and so he paid the widow's allowance and the undertaker's bill without giving notice by publication to creditors to present their claims against the estate. Section 4736, Mills' Ann. Stats. (Sess. Laws, 1885, p. 388) provides that when the county court ascertains that the amount of personal property of an estate of a decedent does not exceed *the amount of the widow's allowance* (not this and the amount of the first class claims), such a course may be pursued, where there is no real estate. When, therefore, the objectors presented and secured the allowance of their claim amounting to nearly $5,000, and subsequently applied to have the approval orders set aside, and the court heard evidence in support of the application (none of which is in the record before us), we must indulge the presumption obtaining in such cases that, under well-recognized grounds for granting equitable relief, a sufficient showing of the foregoing and other facts was made to uphold the ruling of the court; and that, in setting aside the approval orders, the court duly considered the administrator's claim to protection for making payments under its previous orders, or that it might have found that such payments, if made, were not made in good faith.

The administrator further contends that there was no jurisdiction of the subject-matter when the vacating orders were entered;—that is to say, that the money paid by him was beyond the jurisdiction of the court, as were, also, the persons to whom the payments were made. The subject-matter was not the money paid, but it was, in the one case, the matter of the claim for the widow's allowance, and, in

the other, the claim of the undertaker. Of both these un-
questionably the court had jurisdiction. In another part of
his argument counsel contends that the administrator is the
representative throughout the proceedings of all the credit-
ors of the estate, and it is upon this ground he insists that
the objectors were bound by the approval orders, even before
their claims were established. If such a position is tenable
(which we do not decide), it certainly should be applied
against the administrator, as well as against the creditor;
and it clearly appearing that he, as administrator, was present
in person and by attorney when these vacating orders were
entered, it would follow, if the administrator's contention is
sound, that, in this sense, the court had jurisdiction of the
undertaker. But the latter is not here complaining of any
action of the county court. If, however, he were objecting,
since the record does not affirmatively show lack of jurisdic-
tion of his person, we must indulge the presumption, in favor
of the regularity of the proceedings of a court of record, that
he had his day in court. As to the widow, it may be said
that the administrator does not even claim to represent her,
though he makes a vigorous argument in support of the
position that, as to her, the vacating order is void. If it
should be admitted that she was not present in court when
it was made, she certainly has waived any objection thereto
by reason of subsequent proceedings in the court from which
it appears that she unsuccessfully appealed from the vacat-
ing order, and upon final hearing voluntarily asked the court
to make a new award to her, and when the estimate was
returned by the appraisers, asked to have it approved by the
court, which was done.

We conclude, therefore, in the light of the foregoing, that
the county court had jurisdiction to enter these vacating
orders; and that it did so; and that all persons in any wise
affected by them were within the jurisdiction of the court,
either at the time, or by reason of the subsequent proceed-
ings. So that, when the court came to dispose of the admin-
istrator's final report, there was no existing order for the

widow's allowance, and there was a valid existing order fixing the undertaker's bill at $400. There was no error, therefore, in entertaining an application for fixing anew the widow's allowance, and in giving credit to the administrator for only $400 upon the undertaker's bill.

As to the cross-errors assigned by the objectors, if it be assumed that it is a proper practice on this review to entertain them, we are of opinion that they should be overruled. It is true that the amount allowed the widow upon the final hearing was $2,315 when the total value of the assets of the estate amounted to only $5,422, of which $3,422 were the proceeds of a life insurance policy. There were three different applications to the county court for fixing this amount, two of which were set aside, and we do not feel at liberty under the facts of this case to interfere with this last ascertainment. The county court was in a better position than are we in passing upon this matter, and inasmuch as the showing upon which it was made was sufficient to justify the award, we must let it stand.

It is true that the conclusion which we have reached may operate as a hardship to the administrator upon the theory that he acted in perfect good faith in paying out money under orders of the court. In this case, it may be said, that in his haste to pay the widow he drew his check in her favor two days before the court directed him to do so, and two days before she elected to waive her right to the specific property and, in lieu thereof, accept its value in money. Besides, when he made these payments he was charged with knowledge of the power of the court, for good cause shown, to annul and set aside the orders under which he acted; and if such orders were improperly obtained through mistake, or by means of fraud perpetrated upon the creditors, or upon the court, it was entirely within the jurisdiction and power of the county court to vacate them.

After a very careful examination of the record, we are satisfied that the decree and judgment of the county court was

VOL. XXV—4

in all respects substantially correct and in the best interests of the estate and those concerned in its distribution. The judgment of the county court is therefore affirmed.

*Affirmed.*