[No. 6476.]

## KAVANAGH ET AL. V. HAMILTON.

1. JUDGMENTS—*Void and Voidable—Direct or Collateral Attack*—If an inspection of the record proper shows that in giving judgment the court acted without jurisdiction the judgment is void, and may be collaterally attacked. If the record furnishes no evidence of nullity, or if it recites jurisdictional facts which are untrue, the judgment is voidable, and the attack upon it must be direct, and the evidence to establish its infirmities must come from other source than the judgment roll. A domestic judgment of a court of general jurisdiction cannot be attacked collaterally unless the judgment roll affirmatively shows a want of jurisdiction.

2. ——*Direct Attack—What Is*—Direct attack upon a judgment may be made by motion, by answer and cross-complaint, by an equitable action to vacate it, or enjoin its enforcement, by writ of error, or possibly by bill of review.

3. ——*Evidence*—In a direct attack upon a judgment upon the ground that no service of process was had, oral evidence may be received to impeach the record, where no third parties have acquired rights, upon the faith thereof. But the evidence must be clear and convincing. Testimony of a lady of twenty-two or twenty-three years that she was not served with process in a certain cause, fifteen years before that, that she did not remember any such service, nothing having occurred in the meantime to call her attention to the question, was held insufficient to overthrow a decree in such cause upon due return of service recited in the record.

4. ——*Collateral Attack*—A suit to partition lands, against those who claim under a mortgage by the administratrix of a former proprietor, under authority of a decree of the county court, one of the heirs of such former proprietor being plaintiff, and claiming that in the proceeding in which the mortgage of the administratrix was authorized, no service of the summons was had upon her, is a collateral attack upon the decree in such proceeding.

5. COUNTY COURT—*Character of*—In the settlement of estates the county court is a court of record and general jurisdiction. In any collateral attack upon its decrees jurisdiction of both the subject matter and the person is presumed. The absence of jurisdiction must be determined by its own record. The mere absence of any summons and return of service does not suffice, even though in the record there is no recital of service.

6. DISTRICT COURT—*Jurisdiction to Review Proceedings of the County Court*—The district court has no jurisdiction to review, in a collateral action, a decree of the county court, and vacate it for mere error or irregularity, even though sufficient to reverse such decree on error brought.

7. EVIDENCE—*Competency*—Where the summons has been lost from the files of a cause which has gone to final decree, a certified copy of the summons will not be received to contradict the recital of service, appearing in such final decree.

8. PROCESS—*Summons*—*Misnomer of Defendant in Return*—Misnomer of the defendant in the officer's return of a summons is immaterial if the defendant was actually served.

*Appeal from Denver District Court.*—Hon. GEORGE W. ALLEN, Judge.

Mr. BRANCH H. GILES, Mr. EDWARD C. STIMSON, Mr. LAWRENCE LEWIS, Mr. WILLIAM B. TEBBETTS, Mr. CHARLES B. WARD, for appellants.

Mr. E. P. Costigan; Messrs. Ward & Ward, Mr. Hugh McLean, for appellee.

Mr. Justice Garrigues delivered the opinion of the court:

1. October 6, 1891, Robert J. Hamilton died intestate, owning Denver property on Glenarm street. He left as his sole heirs, his widow Hannah Hamilton, two sons, George A. and Franklin R. Hamilton, and two daughters, Jessie F. and Georgie B. Hamilton. The latter was plaintiff below and is appellee here. Her name was Georgie, but in this suit, begun March 17, 1906, it is spelled Georgia. She was born March 28, 1885, and when her father died, was five and a half years old.

Mr. Hamilton's estate was insolvent. The family lived in the Glenarm street property, on which was an encumbrance of ten thousand dollars, bearing interest at the rate of 7 per cent per annum, and due October 22, 1893. The widow was appointed administratrix, and January 4, 1892, filed a petition in the county court, naming plaintiff as one of the defendants, and asking to sell or encumber the premises to pay debts. The petition alleged that decedent left no personal estate of any kind or value; that there was a large indebtedness on which the interest was past due; and that the taxes were unpaid. Petitioner asked to be authorized to either negotiate a loan, or to sell the real estate. On this petition a summons was issued, and January 6, 1892, returned served. March 8, 1892, W. T. Rogers was appointed guardian *ad litem* for the minor heirs, and March 14, 1892, answered the petition. May 23, 1912, after hearing the petition, the court entered a decretal order, finding due and legal service of process had been made upon all the defendants in the manner prescribed by law, and authorizing the administratrix to borrow fifteen thousand dollars at 7 per cent interest, and to secure the payment of the same by executing a trust deed on the property. June 28, 1892, this order was

amended or modified by making the rate of interest 7 1-2 per cent. She borrowed the fifteen thousand dollars from J. S. Brown and Brother, and secured its payment by a deed of trust on the property. July 11, 1892, the loan was approved by the court. October 27, 1894, taxes and interest being in default, the premises were advertised, and November 28, 1894, sold under the trust deed to J. Sidney and Junius F. Brown, who received a trustee's deed. The subsequent deeds of conveyance are as follows: J. Sidney and Junius F. Brown to Thomas Harrison; Thomas Harrison to Charles A. Brinley; Charles A. Brinley to Viola F. Hallowell; Viola F. Hallowell to Ella T. Kavanagh; and Ella T. Kavanagh to The Roanoke Investment Company, and since the foreclosure, they have been in possession of the property, paid the taxes, and collected all the income.

For over fourteen years, the original summons issued on the petition to sell or encumber, remained in the files of the county court. In February, 1906, it was examined by defendant's counsel, and notes taken of the return. In March, before the institution of the partition suit, it was examined by plaintiff's counsel, who ordered certified copies of both the petition to sell and the summons, which were furnished by the clerk of the court. When the complaint was filed on the 17th, alleging no personal service on the plaintiff, defendant's counsel again examined the files, but the summons could not be found. Thereafter, counsel for both parties met, while at the courthouse inquiring about the lost summons, and while there, they compared the certified copy of the petition with the original on file, and found that plaintiff's name was spelled Georgie in the original petition, but that in the certified copy, it was spelled George, exactly as in the certified copy of the return. The person who made the copies, when her attention was called to the matter, said that if she had made such a mistake in the petition, she was not sure that the copy of the return was correct.

At the trial in the district court, the original summons could not be produced or accounted for, and to prove that an insepction of the judgment roll would show the judgment void, the court admitted in evidence the certified copy of the summons and return. In this certified copy of the sheriff's return, plaintiff's name is spelled George B. Hamilton. There is no "i" between the second "g" and the letter "e." The certified copies of the summons and petition were made by the same person, and the clerk signed the certificate without any personal knowledge as to whether or not they were correct. Each counsel testified as to how the name in the original appeared to him when he examined it. Counsel for defendants said, in his opinion, the name was spelled "Georgie B. Hamilton," and he so entered it on notes made at the time; that there was a blot between the second "g" and final "e." Counsel for plaintiff testified, that in his opinion, the name was spelled "George B. Hamilton" on the original return; that it appeared as if the person in writing the second "g," had stopped, as if with indecision, before making another letter, giving an indentation between the "g" and "e;" but which was not dotted.

2.  Plaintiff says this suit is to recover her interest in the land, and to partition the premises. She alleges she is the owner of an undivided 1-8 of the property, to which interest, defendants have no title; that the county court proceeding as to her is void, because the court had no jurisdiction over her person, for the reason that she was not personally served with summons, and that the recital in the decree as to service is untrue; also that the judgment is void because the court had no jurisdiction over the subject matter. She claims that the judgment is void because the record proper stultified itself by showing that she was not served with summons; or, if the judgment is not void on this account, that it is voidable because she was not served, which fact, she alleges, is established by the evidence. Plaintiff further says, that the name "George B. Hamilton," as found in the certified copy of the sheriff's

return, is not hers, hence the record shows she was not served, notwithstanding the court found, and recites in its judgment that she was. She invokes the rule of law that where a judgment recites generally due service of summons, without giving the specific mode of service, and the officer's return shows the mode of service, which is bad, that the record stultifies itself, and the specific recitals in the return will control the general recitals in the judgment. She prays for a partition or allotment of the premises, or that they be sold, the proceeds divided, and an accounting had of the rents and profits.

3. The district court found that plaintiff was not served with summons in the county court proceeding, and that the county court decree, as to her, was void for want of service; but did not say whether the finding was based on an inspection of the judgemnt roll, or on oral evidence impeaching it. It found plaintiff owned an undivided 1-8 of the property; that The Roanoke Investment Company owned the balance, and ordered the premises to be partitioned, if practicable, by commissioners to be appointed by the court. The case is here on appeal.

4. The words void and voidable do not denote different degrees of faultiness in judgments, but are a classification based on the evidence. If an inspection of the record proper furnishes the facts showing that the court acted without jurisdiction, the judgment is void and may be collaterally attacked. If, on the other hand, the record does not show this jurisdictional infirmity, or does not furnish the evidence of nullity, or if it shows or recites jurisdictional facts which are untrue, the judgment is voidable. The attack upon it, however, in such a case, must be direct, for the purpose of establishing by other evidence the untruthfulness of the record. When this is done, it is as void as any judgment which the record shows was rendered without jurisdiction. The classification generally depends on the method of attack, which is determined by the source from which the evidence comes. If the judgment is void, the source of the evidence to prove it, is the

judgment roll and the attack may be collateral. Whereas, if it is voidable, the evidence to prove it void must come from some source other than the judgment roll, and the attack must be direct, and cannot be collateral. A void judgment must show from an inspection of its own record that it is void, while a voidable judgment shows from its record that it is good, and it will remain good until proven void, in a suit brought for that purpose. Plaintiff contends that the county court judgment is void and was subject to collateral attack; or if she is mistaken in this, then that it was voidable and is subject to direct attack by evidence showing that the recitals in the judgment of due service are untrue.

5. Before plaintiff was entitled to a judgment of partition, she had to establish her title, and before it could render such a judgment, the district court was obliged to find, and it did find, that the county court judgment was void. It is necessary, therefore, at the outset, to determine whether the attack on the county court judgment was direct or collateral. Direct attack on the judgment of a court of record may be by motion, as in *Du Bois v. Clark,* 12 Colo. App. 220; or by answer and cross complaint, as in *Wilson v. Hawthorne,* 14 Colo. 530; or by an equitable action to cancel or enjoin its enforcement, as in *Smith v. Morrill,* 12 Colo. App. 233; or by writ of error, or possibly by a bill of review. This was neither. The main purpose of this suit was to partition the premises in which plaintiff was compelled to establish her title as in ejectment. Her attack on the county court judgment authorizing this loan, is an attempt in a partition suit, to establish title by impeaching the judgment of the county court. This is a collateral attack.—*Hughes v. Cummings,* 7 Colo. 138 and 203; *Thompson v. Corcker,* 18 Colo. 328; *Bateman v. Reitler,* 19 Colo. 547; *Manson v. Duncanson,* 166 U. S. 533; *Cohen v. Portland Lodge,* 152 Fed. 357; *Bradley v. Drone,* 187 Ill. 175. The case last above cited, is directly in point, and many authorities are given. In *Israel v. Arthur,* 7 Colo. 5, it is held where a divorce had been granted, and the wife

afterwards brought suit to establish a right in her husband's estate on the ground that the divorce was void, the attack was collateral.

6.   When a domestic judgment of a court of general jurisdiction is offered in evidence in another suit, it cannot be attacked collaterally unless the record proper, the judgment roll, shows affirmatively that it is void for want of jurisdiction. —*Martin v. Force,* 3 Colo. 199; *Gomer v. Chaffe,* 5 Colo. 383; *Brown v. Tucker,* 7 Colo. 30; *Hughes v. Cummings,* 7 Colo. 138 and 203; *Thompson v. Crocker,* 18 Colo. 328; *Bateman v. Reitler,* 19 Colo. 547; *Farmers' U. D. Co. v. Rio Grande Co.,* 37 Colo. 512; *Cochrane v. Parker,* 12 Colo. App. 169; *Harter v. Shull,* 17 Colo. App. 162.

In a collateral attack on a domestic judgment of a court of record, an inspection of the judgment roll must affirmatively show the infirmity which deprives the court of jurisdiction, and renders its judgment void.—*Burke v. Interstate Sav. Assn.,* 87 Am. St. Rep. 416.

7.   The county court in the settlement of estates, is a court of record and of general jurisdiction.—*Clemes v. Fox,* 25 Colo. 39; *Hughes v. Cummings,* 7 Colo. 203; *Thompson v. Crocker,* 18 Colo. 328; *Bateman v. Reitler,* 19 Colo. 547; *Rawles v. People,* 2 Colo. App. 501.

8.   Having shown that the county court is a court of record, and of general jurisdiction in probate matters; that this a collateral attack made against its judgment in a partition suit in the district court, and that the infirmity, if any, which renders the judgment void on such attack, must affirmatively appear from the record, we will now inspect the record.   Courts of record are presumed, on collateral attack, to have jurisdiction over the parties and the subject matter.— *Farmers' U. D. Co. v. Rio Grande Co.,* 37 Colo. 512; *Hughes v. Cummings,* 7 Colo. 138; *Pennington v. McNally,* 11 Colo. 557; *Behymer v. Nordloh,* 12 Colo. 352; *Fletcher v. Stowell,* 17 Colo. 94; *Martin v. Force,* 3 Colo. 199; *Gomer v. Chaffe,* 5 Colo. 383.   The above cases are ample author-

ity for the statement that if the county court judgment had contained no recital of jurisdiction, and no summons was found in the record, jurisdiction over the person and subject matter would be presumed. In other words, on collateral attack, the jurisdiction of a court of record must be determined by its own record, and unless it therein affirmatively appears that the court was without jurisdiction, jurisdiction will be presumed. The mere absence of a summons and return, coupled with the absence of any recital of service in the judgment, does not make it affirmatively appear that the court was without jurisdiction. Jurisdiction on collateral attack will be presumed until that presumption is affirmatively overthrown by an inspection of the judgment roll.—*Gulickson v. Bodkin,* 78 Minn. 33; *Burke v. Interstate Sav. Assn.,* 87 Am. St. Rep. 416.

This court is committed to the doctrine that if the judgment recites generally due service of process, without giving the mode, and the return of the officer shows the mode of service, which is bad, that the record stultifies itself, and the return will impeach the general recitals in the decree.

In the case at bar, one part of the record proper, to-wit, the judgment, recites due and legal service, while another part, to-wit, the summons and return, cannot be found; therefore the record proper, without other evidence, affirmatively shows jurisdiction. A certified copy of the missing summons and return were admitted in evidence for the purpose of showing that the record stultified itself, because her name was spelled in the return, George B. Hamilton. No authority has been cited holding that one part of the record proper, on collateral attack, may be impeached by a certified copy of another part of the record. In *Gage v. The People,* 207 Ill. 377, it is held that a copy of an original notice which had been lost, could not be used to impeach the recitals in the record; but the opinion does not state whether the copy was certified.

If a certified copy of a summons and return may be used to impeach the recitals of service in the judgment, the danger

of doing so, unless the evidence shows beyond a reasonable doubt that the certified copy is correct, is forcibly and strikingly illustrated in this case. Plaintiff's bible name, child name, home name, and name given by her mother in the settlement of the estate, is spelled Georgie. In the original petition it is spelled Georgie. In the certified copy of the petition it is spelled George, just as it is in the certified copy of the return. The clerk, with no personal knowledge of their accuracy, attached a certificate to both. We know that clerical errors and mistakes do occur in certified copies. The person who made these, was careless, and admitted that the same mistake might have occurred in the copy of the return as in the petition. Suppose the petition was lost, and the copy, which we now know is wrong, was admitted to impeach the recital in the judgment. It would be a manifest wrong, and goes to show the danger of admitting a copy for the purpose of impeaching a court record. The evidence of the attorneys who inspected the original return, tends to show that the name was intended for Georgie. The fact that there was an indentation between the "g" and "e" which was not dotted, is not sufficient to show that the name was intended for George and not for Georgie. Under all the circumstances, we have no hesitancy in saying that the certified copy of the return in this case is not sufficient to impeach the recitals in the judgment.

9. The claim that the judgment is voidable because, in fact, she was not served, and the recital in the decree is untrue, will be considered later. We are now dealing with the case, not from the standpoint of the untruthfulness of the record; but that an inspection of the record shows that the judgment is void. From this viewpoint it will be implied, and we have a right to assume that she was served with a summons. From this view, her complaint is not that she was not in fact served; but that an inspection of the record shows that she was not served, the name being spelled George B. Hamilton, which stultifies the recital in the judgment, that she was served,

because her name is not George. In other words, the complaint is based upon the mis-spelling of her name in the return. If the plaintiff was in fact served with summons, and her name was spelled in the return, George B., it was an immaterial variance that in no way prejudiced or misled her under the circumstances of this case. The mere omission of the letter "i" in spelling her name in the return, will not overcome the recital in the decree that she was in fact served. On collateral attack, this mistake in the return is not sufficient to render the service upon her invalid. The statute required personal service upon her; but she was a mere child six years of age, without the slightest comprehension of the legal document. She was living with her mother, her natural guardian, who was administratrix of the estate, had filed the petition, and was attending to the court proceedings. A guardian *ad litem* was appointed for plaintiff, who appeared in court and filed on her behalf an answer to the petition. Under such circumstances the law will not permit, fifteen years afterwards, the ownership of valuable property which has passed into the hands of others, upon the faith of court records, to be overturned by a mistake in the spelling of a child's first name in the return of a summons. Suppose her name was Jessie and it was spelled in the return Jesse, or that she spelled her name Frances, and it was spelled in the return Francis, it would make no difference if she was in fact served. Such a mis-spelling of the name would not stultify the recital in the judgment of due and legal service.—*Archibald v. Thompson*, 2 Colo. 388; *Marr v. Wetzel*, 3 Colo. 2; *Schlacks v. Johnson*, 13 Colo. App. 130; *Smith v. Smith*, 13 Colo. App. 295; *Rich v. Collins*, 12 Colo. App. 511; *Lane v. Innes*, 43 Minn. 143; *Schooler v. Asherst*, 13 Am. Dec. 232; *State v. Patterson*, 38 Am. Dec. 699; *Belton v. Fisher*, 44 Ill. 32; *Mallory v. Riggs*, 76 Iowa 748; *Pond v. Ennis*, 69 Ill. 341; *McGhee v. Romatka*, 19 Tex. Civ. App. 397; *Insurance Co. v. French*, 18 Howard, 404; *Townsend v. Ratcliff*, 50 Tex. 148; *McAuliff v. Hughes*, 112 N. Y. Supp. 486; *Waterbury v. Mather*, 16 Wend. 611; *First Nat. Bank*

*v. Jaggers,* 100 Am. Dec. 53; *Parry v. Woodson,* 84 Am. Dec. 51; *Foshier v. Narver,* 41 Am. St. Rep. 874.

10.    We will now consider the case from the viewpoint that the recital of service in the judgment is untrue, that the judgment is voidable, and the attack direct for the purpose of having it declared void.    In direct attack on a judgment upon the ground that there was no service, if third parties have not acquired rights upon the faith of the return, and no one is affected except the parties in the case in which the return is made, oral evidence is admissible for the purpose of impeaching the record.    But in such a case public policy requires that the record should not be overthrown except upon clear and convincing evidence.—*Manson v. Duncanson,* 166 U. S. 533; *Ferguson v. Crawford,* 86 N. Y. 609; *Owens v. Ranstead,* 22 Ill. 161; *Davis v. Dresback,* 81 Ill. 395.    In the latter case the officer's return showed personal service on the man and his wife.    They each testified they were not served with process.    The officer testified that he personally served each of them with summons in the manner specified in his return.    The lower court set aside the service.    On appeal, the supreme court of Illinois held that the evidence was not satisfactory, and set aside the finding of the lower court on the ground that the evidence was insufficient to impeach the return of the officer.

In the case at bar, the record shows due and legal service of summons upon the plaintiff.    A sworn officer of the court testified that he made personal service of summons on her.    To impeach this record and overthrow the whole court proceeding, as to her, we have her evidence that she was not served with summons.    In considering the weight of her testimony to determine whether she has established her claim beyond a reasonable doubt, we must consider all the facts and circumstances in the case.    When she testified, she was some twenty-two or twenty-three years of age.    When the service was made upon her, she was six years of age.    Nothing had transpired between these dates to cause her to think or remember whether she had been served or not.    In fact, she says

the first time that she remembered it, or thought about it, was when she was asked in her attorney's office during the preparation of the case, and shortly before the trial, whether she had been personally served with summons. She knew that her father at one time had owned this Glenarm street property, and if her mind was so keen at six years of age, it would certainly have come to her knowledge through family history, that they had lost the property through some court proceeding. It is strange that it had never occurred to her until the attorney asked her whether she was served with summons. A child six years of age has no understanding or conception whatever of legal transactions, and it is unreasonable to believe that fifteen years after the occurrence she could suddenly remember, in the preparation of this suit, that no service had been made upon her. The whole story is told by two questions asked her by her counsel: "Q. Do you remember in the year 1892, ever having any legal or court papers served on you by the same being handed to you or read to you? A. I do not. Q. Do you remember any sheriff or deputy sheriff, in 1892, reading or handing any such papers to you? A. No sir." True, she said she was very positive that she was not served with summons in any way or at any time; but evidence is not always what a witness says; it is the effect of what he says. The effect of her whole testimony was, that she did not remember whether she was served or not. We know from the circumstances of the case, her age at the time, and the manner of service, that it was impossible for her to remember. The evidence was insufficient to justify the district court in finding that she was not served with summons.

11. The finding of the district court that the county court had no jurisdiction over the subject matter on account of errors and irregularities, is erroneous. As we have already said, the county court is a court of record, and of general jurisdiction in probate matters, and in the settlement of estates. If it had jurisdiction over the person and subject mat-

ter, the district court was without authority to review its judgment for errors and irregularities. The district court made a finding of the matters which deprived the county court of jurisdiction over the subject matter, which may be summarized as follows: First, insufficiency of the petition; second, failure of the order appointing the guardian *ad litem* to mention specifically the names of the minor heirs; third, that the rate of interest was changed by amending the order to read 7 1-2 per cent instead of 7 per cent; fourth, that the trust deed failed to recite the order of the county court; fifth, that the trust deed did not purport to bind the appellee; sixth, that the court authorized a deed of trust instead of a mortgage.

The county court petition to sell or encumber, is in substantial compliance with the statute, and was sufficient to call into operation the jurisdiction of the county court over the subject matter. The district court was in error in holding that the petition was insufficient to confer jurisdiction upon the county court over the subject matter. In *Bradley v. Droan,* 187 Ill. 175, the court says:

"It is said, the petition filed by the administrator, asking for an order to sell real estate to pay debts, fails to allege necessary facts with reference to amount of claims allowed, the estate on hand and the manner of disposing of the same, and the amount of claims paid. While we are satisfied the petition is a substantial compliance with the requirements of the statute, the objections pointed out, if well founded, are at most but mere irregularities, and are not open to review in this collateral proceeding. There may be errors in the proceedings to sell land which might, on direct appeal, lead to a reversal of the order; but where, as here, the proceeding to sell is attacked collaterally, as is held in the case last above cited it cannot be defeated or impeached for mere errors."

All the matters found by the district court to be jurisdictional, were at most mere errors or irregularities. It does not matter even if some of them were serious enough to have reversed the case on review, the petition was in substantial

compliance with the statute that gave the county court juris-
diction over the subject matter, and in this collateral attack
the district court was powerless to review the action of the
county court for any errors committed in that proceeding.
—*Nichols v. Lee,* 16 Colo. 147; *Bateman v. Reitler,* 19 Colo.
547; 18 Cyc. pp. 715, 724, 802, 807 and 809; *Blackman v.
Mulhall,* 19 S. Dak. 534; *Magee v. Big Bend Land Co.,* 51
Wash. 406; *Bradley v. Droan,* 187 Ill. 175; *Burris v. Ken-
nedy,* 108 Calif. 331; *Est. of Devincenzi,* 119 Calif. 498.

*Reversed.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.